## Ex parte HAVARD.  (1 Div. 290.)

(Supreme Court of Alabama. Jan. 31, 1924. Rehearing Granted May 29, 1924. Further Rehearing Denied June 30, 1924.)

On Rehearing.

Admiralty ⟐21 — Employee held engaged in nonmaritime service when injured.

Death of employee, whose employer had elected to become subject to Workmen's Compensation Act, while grading and tallying lumber being unloaded from barge to dock at employer's planing mill, *held* compensable under such act, though he was on schooner moored alongside of barge in navigable river when injured.

Miller and Thomas, JJ., and Anderson, C. J., dissenting.

Certiorari to Circuit Court, Mobile County; Saffold Berney, Judge.

Suit by Eva J. Havard against G. M. Rosengrant, for compensation under the Workmen's Compensation Act for the death of Fritz R. Havard, employee of defendant. Judgment for defendant, and plaintiff brings certiorari. Reversed and remanded.

The amended complaint, excepting section 5, reads as follows:

"Eva J. Havard files this her complaint against G. M. Rosengrant, doing business under the name and style of the Riverside Manufacturing Company, under the Workmen's Compensation Act of the state of Alabama, and respectfully shows unto the court as follows:

"(1) That she is the widow of Fritz R. Havard, deceased, and is a resident of the city and county of Mobile, state of Alabama, and resides at and her address is 1083 Spring Hill avenue, Mobile, Ala., and that she is over the age of 21 years, and that the defendant, G. M. Rosengrant, who, at the day of the death of her husband, as hereinafter set forth, was doing business under the name and style of the Riverside Manufacturing Company, is over the age of 21 years, and is a resident of the city and county of Mobile, and has his place of business on Mobile river at or near the foot of Madison street, in Mobile, Ala.

"(2) That on, to wit, August 24, 1922, the defendant, G. M. Rosengrant, was engaged under the name and style of the Riverside Manufacturing Company, in the business of lumber dealer, and of operating a lumber yard and lumber planing mill which constituted the plant of the said Riverside Manufacturing Company, and was situated upon the bank of Mobile river at or near the foot of Madison street, in the city of Mobile, and, that in his said business he was regularly receiving large shipments of lumber by barges docking at the wharf in front of or adjoining his said plant, said barges being towed or brought to said wharf by tugs or other tow boats.

"(3) That the defendant in his said business was regularly employing more than 16 employees, and that he had elected to become subject and was subject, in his relation with his said employees, to part 2 of the Workmen's Compensation Act of the state of Alabama.

"(4) That on, to wit, the said 24th of August, 1922, Fritz R. Havard, the husband of the plaintiff, was regularly in the employ of the defendant in the usual course of the defendant's said business, being employed by the defendant in that business in the capacity of lumber inspector and grader, and that the average weekly earnings of the said Fritz R. Havard in his said employment by the defendant were $30 per week, and that the defendant and the said Fritz R. Havard in their said relation of employer and employee were at the time of the death of the latter, as hereinafter set forth, subject to the provisions of part 2 of the Workmen's Compensation Act of Alabama.

"(5) [This section appears in the opinion of Justice MILLER.]

"(6) That the said Fritz R. Havard at the time of his death had the following dependents in addition to claimant, his widow, who was residing with him as his wife until he died, viz.: Fritz R. Havard, Jr., aged eight years, and Ralph W. Havard, aged six years, who now reside with claimant, their mother, and who are the minor children of claimant and the said Fritz R. Havard, deceased. And she alleges that she and her said two children were wholly dependent upon the said husband and father, Fritz R. Havard, at and until the time of his injury and death.

"(7) That she has given notice of said accident to the said employer as required by the Workmen's Compensation Act of Alabama, and within the time prescribed by said act, but that the said employer has wholly failed to pay the compensation provided by the said act, and still refuses to pay.

"Wherefore, the premises considered, claimant shows unto the court that she is entitled to receive from the defendant, G. M. Rosengrant, doing business under the name and style of the Riverside Manufacturing Company, on behalf of herself and her said minor children, the compensation provided by part 2 of said Workmen's Compensation Act and she therefore prays the said G. M. Rosengrant, doing business under the name and style of the Riverside Manufacturing Company, be made a party defendant to this her complaint, and that this court will make an order fixing the time and place for the hearing of her said complaint, and that the said defendant be required to file a verified answer to this complaint, setting up the facts, if any, upon which it relies in defense hereof; and she prays that upon the hearing of this matter a decree will be entered granting her said compensation and such other and further or different decree, order, and relief as she may be entitled to receive or as the circumstances of the case may justify."

Outlaw & Kilborn, of Mobile, for appellant.

The fact that the schooner upon which Havard was sitting when shot was moored in navigable waters does not debar his widow and children their right of recovery under the Alabama Workmen's Compensation Act, nor deprive the courts of this state of jurisdiction to award compensation. Grant-Smith-Porter Ship Co. v. Rohde, 257 U. S.

⟐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

469, 42 Sup. Ct. 157, 66 L. Ed. 321, 25 A. L. R. 1008; Western Fuel Co. v. Garcia, 257 U. S. 233, 42 Sup. Ct. 89, 66 L. Ed. 210; State Ind. Comm. v. Nordenholt Corp., 259 U. S. 263, 42 Sup. Ct. 473, 66 L. Ed. 933, 25 A. L. R. 1013; Bockhop v. Phœnix Transit Co., 97 N. J. Law, 514, 117 Atl. 624; Lawton v. Diamond Coal & Coke Co., 272 Pa. 74, 115 Atl. 886; Woolcy v. E. N. Wichert Co., 275 Pa. 167, 118 Atl. 765; Lumbermen's Reciprocal Ass'n v. Adcock (Tex. Civ. App.) 244 S. W. 645; Los Angeles Shipbuilding & Dry Dock Co. v. Ind. Accident Comm. of Calif., 57 Cal. App. 352, 207 Pac. 416; Berry v. Donovan & Sons, 120 Me. 457, 115 Atl. 250, 25 A. L. R. 1021; Act of Congress of June 10, 1922, c. 216, 42 Stat. L. 634, 1922 Supp. Fed. Stat. Ann. p. 225.

Smiths, Young, Leigh & Johnston, of Mobile, for appellee.

The tort which produced decedent's death was a maritime tort; the services which he was performing at the time of the accident were maritime in character, and his contract of employment was a maritime contract; therefore admiralty had ' exclusive jurisdiction of the cause of action. Atlantic Transport Co. v. Imbrovek, 234 U. S. 59, 34 Sup. Ct. 733, 58 L. Ed. 1208, 51 L. R. A. (N. S.) 1157; So. Pac. Co. v. Jensen, 244 U. S. 217, 37 Sup. Ct. 524, 61 L. Ed. 1086, L. R. A. 1918C, 451, Ann. Cas. 1917E, 900; Knickerbocker Ice Co. v. Stewart, 253 U. S. 149, 40 Sup. Ct. 438, 64 L. Ed. 834, 11 A. L. R. 1145; Western Fuel Co. v. Garcia, 257 U. S. 233, 42 Sup. Ct. 89, 66 L. Ed. 210; State Ind. Comm. v. Nordenholt Corp., 259 U. S. 263, 42 Sup. Ct. 473, 66 L. Ed. 933, 25 A. L. R. 1013; Netherlands American Steam Nav. Co. v. Gallagher (C. C. A.) 282 Fed. 171; Newham v. Chile Exploration Co., 232 N. Y. 37, 133 N. E. 120, 25 A. L. R. 1018; Robinsón v. The C. Vanderbilt (D. C.) 86 Fed. 785; Constantine v. Schooner River Queen (D. C.) 2 Fed. 731; Gilis v. The Mattie May (D. C.) 47 Fed. 69; De Lovio v. Boit, 7 Fed. Cas. 418, No. 3,776. The E. A. Baisley (D. C.) 13 Fed. 703; The Bark Onore, 18 Fed. Cas. 728, No. 10,538; Roberts v. The Bark Windermere (D. C.) 2 Fed. 722; Zampiere v. William Spencer & Son Corp., 194 App. Div. 576, 185 N. Y. Supp. 639; Farrel v. Waterman Steamship Co. (D. C.) 291 Fed. 604; Id. (D. C.) 286 Fed. 284; The Canadian Farmer (D. C.) 290 Fed. 601.

\*

MILLER, J. This is a suit by Eva J. Havard against G. M. Rosengrant, doing business under the name of Riverside Manufacturing Company, under the Workmen's Compensation Act, to recover compensation thereunder for herself and two children, Fritz R. Havard, Jr., aged eight, and Ralph Havard, aged six, for the death of Fritz R. Havard, an employé of the defendant, husband of plaintiff, and father of the two children.

The plaintiff secured an order of the court authorizing her under section 7 of the act to employ an attorney for the purpose of proceeding against the defendant under section 28 of the act (Gen. Acts 1919, p. 206), and filed her complaint to recover compensation, as provided by the Workmen's Compensation Act. The defendant demurred to the complaint, which demurrer was sustained. The complaint was amended; demurrers to it as amended were filed by the defendant, and they were sustained by the court. On the same day the court refused the motion of plaintiff, theretofore filed, to fix a day to hear her suit. The plaintiff declined to plead further, and the court then rendered judgment in favor of defendant, and against plaintiff, dismissed the cause, and taxed plaintiff with the court costs.

No evidence was taken, and the case is before us on the record proper by certiorari.

Was this suit properly brought by the plaintiff, the widow of the deceased employé, for the benefit of herself and the two children of the decedent? It is true that section 1, pt. 1, of this act (Gen. Acts 1919, p. 206), states—

"He [meaning employé], or in case of death, his personal representative, for the exclusive benefits of the surviving spouse and next of kin, shall receive compensation by way of damages therefor from the employer."

But section 14, subd. 4, p. 218, of the act, reads:

"In death cases, where the death results proximately from the accident within three years compensation payable to dependents shall be computed on the following basis and shall be paid to the persons entitled thereto without administration."

Section 14, subd. 7, p. 218, of this act, reads:

"If the deceased employee leave a dependent widow * * * and either two or three dependent children, there shall be paid to the widow for the benefit of herself and such children fifty per centum of the average weekly earnings of the deceased."

These sections must be examined and interpreted together.

It appears from the complaint as amended that the death of the employé resulted proximately from the accident within three years; and that he left a widow and two dependent children. The compensation under these circumstances should be paid to the widow, without an administration of the estate of the decedent, for the benefit of herself and the two dependent children. No necessity for an administration of the estate existed under the facts averred in the complaint.

When the three above-mentioned sections of the act are read and construed together,

and are applied to the facts stated in the complaint, it is evident that the plaintiff, the widow of decedent, is the proper party to maintain'this suit. This was clearly the intent of the act under the facts appearing in the complaint. Section 1, p. 206, and section 14, subds. 4, and 7, p. 218, Workmen's Com- .pensation Act (Gen. Acts 1919, p. 206); Ga. Casualty Co. v. Haygood, 210 Ala. 56, 97 South. 87, headnote 3.

The facts averred in the amended complaint show that Havard, the deceased employé, was a lumber inspector and grader, and was employed in that capacity by the defendant, and he was performing his duties under such employment when the accident occurred which caused his death. The defendant was operating a lumber yard and planing mill, located on the bank of Mobile river, in the city of Mobile, and was regularly receiving shipments of lumber by barges at the wharf in front of his mill. The barges were towed to the wharf by tugs. The defendant was employing regularly more than 16 men, and had elected to become subject to part 2 of the Workmen's Compensation Act with relation to the men under his employment. The amended complaint also alleged that the deceased and the defendant were subject to part 2 of the act at the time of the death of this employé, and it states the average weekly earnings of the employé. Section 5 of the amended complaint reads as follows:

"That about 1:30 p. m. on, to wit, the said 24th of August, 1922, while the said Fritz R. Havard, in the usual course of the said business of his employer, the defendant, was sitting or standing upon a laden schooner moored in Mobile river alongside of a barge, which in turn was moored in Mobile river to the dock or wharf at the defendant's said plant, and was engaged for his said employer in grading and/or tallying lumber then being unloaded from said barge, and from thence carried or carted into the yard or mill of defendant's said plant, he was injured and came to his death as the proximate result of an accident arising out of and in the course of his said employment by the defendant in this: That, while the said Fritz R. Havard was sitting or standing on said schooner, engaged in the business of his employer as aforesaid, a tug boat was standing close by, waiting for the purpose of towing away the said barge from which Fritz R. Havard was grading and/or tallying lumber, as aforesaid, as soon as its unloading should be completed or for the purpose of towing or moving other barges tied near defendant's said plant, and from which lumber had been or was about to be unloaded into said plant, and that while said tug boat was so standing by a pistol or rifle, being handled or cleaned thereon by a negro whose name is unknown to claimant, but who was then and there the master or a member of the crew of said tug, accidentally exploded or was accidentally fired, and the ball or bullet therefrom struck the said Fritz R. Havard in the head, wounding him so badly that within, to wit, a very few hours he died."

It appears on the face of the amended complaint that the employé, Havard, received the injury from which he died while he "was sitting or standing upon a laden schooner in Mobile river alongside of a barge which in turn was moored in Mobile river to the dock," and while he "was engaged for said employer in grading and/or tallying lumber then being unloaded from said barge," and from thence carried or carted into the yard or mill of defendant. When injured and killed deceased was sitting or standing upon a laden schooner in Mobile river, and was employed for his said employer, the defendant, in grading and tallying, or in grading or in tallying, lumber then being unloaded from the barge. The locus of the injury was on a barge moored in the Mobile river, a navigable stream, which makes it maritime. He was when injured standing on a laden schooner in the Mobile river. Were the services being performed by the employé at the time of the injury under contract with the defendant maritime? It so appears from the amended complaint. The deceased, Havard, was at the time of the injury grading and tallying, or grading or tallying, lumber then being unloaded from the barge for the defendant's mill. This service is necessary in unloading ships or barges laden with lumber.

In Southern Pacific Co. v. Jensen, 244 U. S. 205, 37 Sup. Ct. 524, 61 L. Ed. 1086, L. R. A. 1918C, 451, Ann. Cas. 1917E, 900, Chris Jensen, the deceased, was engaged on board of a ship in unloading it at the wharf in navigable waters in New York when killed; the court saying:

"The work of a stevedore in which the deceased was engaging is maritime in its nature; his employment was a maritime contract; the injuries which he received were likewise maritime; and the rights and liabilities of the parties in connection therewith were matters clearly within the admiralty jurisdiction."

In Atlantic Transport Co. v. Imbrovek, 234 U. S. 52, 34 Sup. Ct. 733, 58 L. Ed. 1208, 51 L. R. A. (N. S.) 1157, the court wrote:

" 'The jurisdiction of the admiralty does not depend upon the fact that the injury was inflicted by the vessel, but upon the locality—the high seas, or navigable waters where it occurred. Every species of tort, however occurring, and whether on board a vessel or not, if upon the high seas or navigable waters, is of admiralty cognizance.' * * * The libelant was injured on a ship, lying in navigable waters, and while he was engaged in the performance of a maritime service. We entertain no doubt that the service in loading and stowing a ship's cargo is of this character. Upon its proper performance depend in large measure the safe carrying of the cargo and the safety of the ship itself; and it is a service absolutely necessary to enable the ship to discharge its maritime duty."

The same reasoning will apply to tallying and grading lumber by a person stand-

ing on a barge located in a navigable stream—Mobile river—while it is being unloaded and carried into the defendant's mill on the bank of the river. The locality is maritime (standing on a barge lying in the Mobile river, a navigable stream, when injured); and the service being rendered by the deceased when injured was likewise maritime (tallying or grading, or both, lumber as it was unloaded from the barge into the mill of the defendant on the bank of the river). Because this work of checking or tallying the lumber by the decedent could have been performed by him on the land does not render the service nonmaritime.

The first and second headnotes in State Ind. Com. v. Nordenholt Corp., 259 U. S. 263, 42 Sup. Ct. 473, 66 L. Ed. 933, 25 A. L. R. 1013, read as follows:

"(1) When an employé, while working on board a vessel lying in navigable waters, sustains personal injuries there and seeks damages from his employer, the liability of the employer must be determined under the maritime law.

"(2) But where the injuries occur while the employé is engaged in unloading the vessel on land the local law has always been applied."

In Newham v. Chile Expl. Co., 232 N. Y. 37, 133 N. E. 120, 25 A. L. R. 1018, the court said:

"The weighing, inspecting and measuring of the cargo of a vessel constitute maritime service,"

—and quoted the following from Robinson v. The C. Vanderbilt (D. C.) 86 Fed. 785:

"Whatever is done to operate a ship, to aid her physically in the performance of her mission, viz., to take freight or passengers, to carry freight or passengers, to unload freight or passengers, and to preserve her while so doing, is a maritime service."

The appellant insists this question was settled in her favor by the principle declared in Grant-Smith-Porter Ship Co. v. Rohde, 257 U. S. 469, 42 Sup. Ct. 157, 66 L. Ed. 321, 25 A. L. R. 1008. We do not think it is a parallel case to this one. There a carpenter was employed to aid in the construction of a ship which was partly completed, and had been launched into the water, but had not entered upon marine service. While engaged in completing the vessel, and while it was moored in navigable waters, the carpenter was injured on board the vessel, and the court held the Workmen's Compensation Act of the state of Oregon (Laws 1913, c. 112) applied, because the contract to build or aid in building the ship was nonmaritime, although the tort which produced the injuries was maritime, as it occurred on navigable waters. The plaintiff in that case was in-jured upon a navigable stream, but the service being performed by him at the time was nonmaritime; the ship had not been completed, had not been delivered, had not entered the maritime service, so the Workmen's Compensation Act of the state of Oregon applied.

In Zampierie v. Spencer & Son, 194 App. Div. 576, 185 N. Y. Supp. 639, the court said:

"'Stevedore' and 'longshoreman' are synonymous terms, when interpreted in the light of the work they perform, viz. loading and unloading vessels. The checker is important and necessary, if account is to be kept of * * * the commodities so handled."

The contract of deceased was to tally and grade the lumber as it was unloaded from the barges in the navigable stream. This was necessary to keep an account of the amount of the lumber unloaded from the different barges. This contract and the services rendered under it were in their very nature maritime. In Constantine v. The Schooner River Queen (D. C.) 2 Fed. 731, the headnote reads as follows:

"The weighing, inspecting and measuring of the cargo of a vessel constitutes a maritime service."

It appears from the complaint the employer, the defendant, was a lumber dealer operating a lumber yard and lumber planing mill on the bank of this navigable stream in the city of Mobile, and was, to use the language of the complaint, regularly receiving large shipments of lumber by barges docking at the wharf in front of or adjoining his plant, the barges being towed or brought to the wharf by tugs or tow boats on this navigable stream. The employé, the deceased, was employed by the defendant in that business in the "capacity of lumber inspector or grader"; his duty was to grade and tally the lumber as it was unloaded from these barges and carried to the defendant's mill or yard. This made the contract of employment in its very nature maritime.

It is true the parties in this cause under the complaint contracted under the Workmen's Compensation Act; but the locality of the injury was maritime; the service being performed by the deceased at the time of the injury was maritime, and the contract of employment was in its nature maritime. If this court made application of this statute to the contract under these circumstances, it would necessarily work material prejudice to a "characteristic feature of the general maritime law," and it would interfere with the proper harmony or uniformity of that law in its interstate relations, which is not permissible under the federal Constitution and statutes. This is clearly pointed out in Grant-Smith-Porter Ship Co. v. Rohde, 257 U. S. 469, 42 Sup. Ct. 157, 66 L. Ed. 321, 25

A. L. R. 1008; The Mercedes de Larrinaga (D. C.) 293 Fed. 251. See, also, Southern Pac. Co. v. Jensen, 244 U. S. 205, 37 Sup. Ct. 524, 61 L. Ed. 1086, L. R. A. 1918C, 451, Ann. Cas. 1917E, 900; Knickerbocker Ice Co. v. Stewart, 253 U. S. 149, 40 Sup. Ct. 438, 64 L. Ed. 834, 11 A. L. R. 1145; Western Fuel Co. v. Garcia, 257 U. S. 233, 42 Sup. Ct. 89, 66 L. Ed. 210.

So, under these authorities, we must hold that the locus of the tort was maritime, the services which the decedent was performing at the time he was injured, which caused his death, were maritime, and the contract of employment was in its very nature maritime; and the Workmen's Compensation Act has no application. The jurisdiction of the federal court in admiralty in such matters was exclusive when the Workmen's Compensation Act was approved on August 23, 1919, to go into effect on January 1, 1920, and this act does not attempt to confer jurisdiction of such actions on the state courts. Knickerbocker Ice Co. v. Stewart, 253 U. S. 149, 40 Sup. Ct. 438, 64 L. Ed. 834, 11 A. L. R. 1145; Western Fuel Co. v. Garcia, 257 U. S. 233. 42 Sup. Ct. 89, 66 L. Ed. 210; State Ind. Comm. v. Nordenholt Corp., 259 U. S. 263, 42 Sup. Ct. 473, 66 L. Ed. 933, 25 A. L. R. 1013; The Mercedes de Larrinaga (D. C.) 293 Fed. 251.

It appears on the face and in the body of the complaint as amended that the court has no jurisdiction of this action under the Workmen's Compensation Act. The demurrers of the defendant point it out, and the court did not err in sustaining them.

No necessity exists for us to discuss and consider the other questions presented by the record, assigned as errors and insisted on in brief of appellant.

The judgment is affirmed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE, THOMAS, and BOULDIN, JJ., concur.

GARDNER, J. (dissenting). I am of the opinion the amended complaint shows a case which should properly proceed in the state court, and that the judgment of the court below should therefore be reversed.

The employer was engaged in the operation of a planing mill and lumber yard on the banks of the Mobile river, and the employé was engaged in grading or tallying the lumber as it was being unloaded for his employer's mill. The complaint discloses that the parties had placed themselves within the provisions of the Workmen's Compensation Act, and it therefore appears that the contract of employment had in contemplation compensation under said act in the event of injury to the employé. The employé was standing upon a schooner which was moored in Mobile river alongside of a barge which was also moored in the river

211 ALA.—39

to the dock at the employer's plant. He was engaged in tallying the lumber then being unloaded when the accident occurred, resulting in his death.

The majority opinion seems to rest exclusively, as I read and understand it, upon the fact that at the time of the injury the employé was upon a schooner in navigable waters. But in cases of this character the locality of the injury is not the sole and exclusive test; the services to be performed must also be of a maritime nature. This was illustrated in Grant-Smith-Porter Co. v. Rohde, 257 U. S. 469, 42 Sup. Ct. 157, 66 L. Ed. 321, 25 A. L. R. 1008, which, in principle, in my opinion, controls in the instant case. At the time of the injury Rohde, in the case just cited, was working upon a vessel in navigable waters, but his employment was not of a maritime nature. It was therefore held that the Workmen's Compensation Law of the state of Oregon applied, the court saying:

"The contract for constructing the Ahala was nonmaritime, and although the incompleted structure upon which the accident occurred was lying in navigable waters, neither Rohde's general employment, nor his activities at the time had any direct relation to navigation or commerce. * * * This conclusion accords with Southern Pacific Co. v. Jensen, 244 U. S. 205; Chelentis v. Luckenbach S. S. Co., 247 U. S. 372; Union Fish Co. v. Erickson, 248 U. S. 308; and Knickerbocker Ice Co. v. Stewart, 253 U. S. 149. In each of them the employment or contract was maritime in nature and the rights and liabilities of the parties were prescribed by general rules of maritime law essential to its proper harmony and uniformity. Here the parties contracted with reference to the state statute; their rights and liabilities had no direct relation to navigation, and the application of the local law cannot materially affect any rules of the sea whose uniformity is essential."

In Ind. Comm. v. Nordenholt, 259 U. S. 263, 42 Sup. Ct. 473, 66 L. Ed. 933, 25 A. L. R. 1013, many of the authorities from the United States Supreme Court discussing this question were reviewed, and it was pointed out wherein the New York courts had misapplied many of these decisions. Among the cases commented upon is that of Sou. Pac. Co. v. Jensen, supra, upon which much stress is laid in the majority opinion in the instant case, and wherein it is pointed out that the work of a stevedore, in which service Jensen was engaged, was maritime in its nature, his employment a maritime contract, and the injury likewise maritime.

Here the contract is not of a maritime nature; the employé was only engaged in grading and tallying lumber, which may have been done as well upon the docks as upon the schooner, where he happened to be. In the Rohde Case, supra, the court called attention to the fact that the contract of employment for constructing the vessel, the Ahala, was nonmaritime. So, also, in the

instant case, the employer was engaged in the business of running a planing mill and lumber yard; certainly a nonmaritime business. Therefore it appears that neither the employment nor the activities of the employé, or those of his employer, have any direct relation to navigation or commerce. He and his employer had contracted with reference to compensation under the Workmen's Compensation Law of the state, and the application of our state law can certainly in no manner materially affect' any rules of the sea or interfere with the uniformity of the maritime law.

As previously stated, and as recognized in the majority opinion, the work of grading or tallying this lumber may have been performed as well upon the land as upon the schooner in the navigable waters. Rohde's Case, supra, is decisive to the effect that the mere fact the employé happened to be at the time upon the navigable waters does not make out a case for admiralty jurisdiction.

I respectfully submit there is nothing in this case upon which to rest the admiralty jurisdiction, save alone the locality of the injury, which, as above shown, is insufficient in the absence of services of a maritime nature. I consider the holding of the majority a matter of great importance, and, having become fully persuaded that the state courts have full jurisdiction, I have deemed the question of sufficient interest to briefly state my views.

I respectfully dissent.

SAYRE, J., concurs in the foregoing dissent.

On Rehearing.

PER CURIAM. Upon a reconsideration of this cause Justices SOMERVILLE and BOULDIN withdraw their concurrence in the former opinion and concur in the dissenting views of Justice GARDNER. The dissenting opinion of Justice GARDNER is therefore concurred in by Justices SAYRE, SOMERVILLE, and BOULDIN, and on rehearing the dissenting opinion is adopted as the opinion of the court.

Application for rehearing is granted. The former judgment of affirmance is set aside, and the judgment of the court below is reversed, and the cause remanded.

SAYRE, SOMERVILLE, GARDNER, and BOULDIN, JJ., concur.

ANDERSON, C. J., and MILLER, J., dissent.

THOMAS, J. (dissenting). I concur in all respects in the dissent by Mr. Justice MILLER, and merely wish to say that the question now decided was not suggested or presented in Tennessee River Nav. Co. v. Walls, 209 Ala. 321, 96 South. 266.