(104 So. 409)

**Ex parte ROSENGRANT. (1 Div. 369.)**

(Supreme Court of Alabama. May 21, 1925.)

**1. Admiralty ⬤═20—Contract of employment in checking lumber from barges, railroad cars, etc., held nonmaritime.**

Contract of employment and services thereunder in inspecting and checking lumber from barges, railroad cars, etc., *held* nonmaritime, and death of employé on schooner moored in navigable river while checking lumber being unloaded from barge between schooner and dock compensable under Workmen's Compensation Act.

**2. Master and servant ⬤═348—Compensation Act liberally construed.**

Workmen's Compensation Act and phrase in section 1, "arising out of and in the course of his employment," should be construed broadly and liberally, so as to advance beneficent objects of act, so far as it will permit.

**3. Master and servant ⬤═373—Death from accidental discharge of pistol by member of crew of tug waiting to remove barge from which deceased was checking lumber held compensable as arising out of and in course of employment.**

Death of employé by accidental discharge of pistol, in hands of member of crew of tug waiting to remove barge, while deceased was checking lumber being unloaded from latter, *held* to have arisen out of and in course of his employment, within Workmen's Compensation Act, § 1.

Certiorari to Circuit Court, Mobile County; Saffold Berney, Judge.

Petition of G. M. Rosengrant, doing business as the Riverside Manufacturing Company, for certiorari to the circuit court of Mobile county, to review judgment awarding compensation to Eva J. Havard under the Workmen's Compensation Act for the death of her husband, Fritz R. Havard, employee. Writ denied, and judgment affirmed.

See, also, 211 Ala. 605, 100 So. 897.

Smiths, Young, Leigh & Johnston, of Mobile, for appellant.

The tort which produced decedent's death was a maritime tort. The services which he was performing at the time of the accident were maritime in character, and his contract of employment was a maritime contract. Therefore admiralty had exclusive jurisdiction of the cause of action. Great Lakes Dredge & Deck Co. v. Kierejewski, 261 U. S. 479, 43 S. Ct. 418, 67 L. Ed. 756; Grant-Smith-Porter Ship Co. v. Rohde, 257 U. S. 469, 42 S. Ct. 157, 66 L. Ed. 321, 25 A. L. R. 1008; Robins Dry Dock & Repair Co. v. Dahl, 266 U. S. 449, 45 S. Ct. 157, 69 L. Ed. 372. There was no evidence from which the court could find that the accident which produced the death of decedent arose out of his employment; hence the judgment was erroneous. Ex parte S. S. S. & I. Co., 207 Ala. 219, 92 So. 458; Ex parte L. & N., 208 Ala. 216, 94 So. 289; Ex parte Mt. Carmel Coal Co., 209 Ala. 519, 96 So. 626; Ex parte Shaw, 210 Ala. 185, 97 So. 694; Ex parte Woodward Iron Co., 211 Ala. 74, 99 So. 97; Ex parte Jagger Coal Co., 211 Ala. 11, 99 So. 99; Andrew v. Failsworth Ind. Soc., 2 K. B. 3273; Kelly v. Kerry Co. Council, 42 Ir. L. T. 23, 1 B. W. C. C. 194; Thier v. Widdifield, 210 Mich. 355, 178 N. W. 16; Klawinski v. Lake Shore R. Co., 185 Mich. 643, 152 N. W. 213, L. R. A. 1916A, 342; Hoenig v. Ind. Comm., 159 Wis. 646, 150 N. W. 996, L. R. A. 1916A, 339; Griffith v. Cole Bros., 183 Iowa, 415, 165 N. W. 577, L. R. A. 1918F, 923; State ex rel. People's Coal & Ice Co. v. District Court, 129 Minn. 502, 153 N. W. 119, L. R. A. 1916A, 344; Wiggins v. Ind. Acci. Board, 54 Mont. 335, 170 P. 9, L. R. A. 1918F, 932, Ann. Cas. 1918E, 1164. See, also, brief on former appeal, 211 Ala. 606, 100 So. 897.

Outlaw & Kilborn, of Mobile, for appellee.

Decedent's contract of employment had no direct relation to navigation. It was not for performance of maritime services, and had no reference to maritime transactions. Decedent was not performing a maritime service when shot; hence the Workmen's Compensation Act is applicable, and the state courts have jurisdiction of the claim. North Pac. S. S. Co. v. Hall Bros. & Co., 249 U. S. 119, 39 S. Ct. 211, 63 L. Ed. 510; Newham v. Chile Expl. Co., 232 N. Y. 37, 133 N. E. 120, 25 A. L. R. 1018; McBride v. Standard Oil Co., 196 App. Div. 822, 188 N. Y. S. 90; Wildfeuer v. Miller & Gold, 196 App. Div. 667, 188 App. Div. 81; Madderns v. Fox Film Corp., 205 App. Div. 791, 200 N. Y. S. 344; Atlantic Transp. Co. v. Imbrovek, 234 U. S. 61, 34 S. Ct. 733, 58 L. Ed. 1208, 51 L. R. A. (N. S.) 1157; Ex parte Havard, 211 Ala. 605, 100 So. 897; Grant-Smith-Porter Ship Co. v. Rohde, 257 U. S. 469, 42 S. Ct. 157, 66 L. Ed. 321, 25 A. L. R. 1008. The accident by which

---

⬤═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

decedent met his death arose out of his employment. Ex parte L. & N., 208 Ala. 216, 94 So. 289; Ex parte Puritan Baking Co., 208 Ala. 373, 94 So. 347; City of Milwaukee v. Miller, 154 Wis. 652; Woodward Ir. Co. v. Bradford, 206 Ala. 447, 96 So. 803; Ex parte Terry, 211 Ala. 418, 100 So. 768; State ex rel. Duluth Co. v. Dist. Ct., 129 Minn. 176, 151 N. W. 912; Ex parte Majestic Coal Co., 208 Ala. 86, 93 So. 728; Ind. Comm. v. Pueblo Auto Co., 71 Colo. 424, 207 P. 479, 23 A. L. R. 348; In re Harraden, 66 Ind. App. 298, 118 N. E. 142; Leonbruno v. Champlain Silk Mills, 229 N. Y. 470, 128 N. E. 711, 13 A. L. R. 522; State ex rel. People's Coal & Ice Co. v. Dist. Court, 129 Minn. 502, 153 N. W. 119, L. R. A. 1916A, 344; Stansberry v. Monitor Stone Co., 150 Minn. 1, 183 N. W. 977, 20 A. L. R. 316; State v. Dist. Court, 141 Minn. 61, 169 N. W. 274; Wold v. Chevrolet Motor Co., 147 Minn. 17, 179 N. W. 219; Anderson v. Security Bldg. Co., 100 Conn. 373, 123 A. 843; C., I. & L. v. Clendennin (Ind. App.) 143 N. E. 303; Dyer v. Rapides Lbr. Co., 154 La. 1091, 98 So. 677.

MILLER, J. This is a proceeding by Eva J. Havard, widow of Fritz R. Havard, against G. M. Rosengrant, doing business as Riverside Manufacturing Company, to be awarded compensation for herself and their two minor children for the death of her husband, under the Workmen's Compensation Act. Gen. Acts 1919, pp. 206–239. There was judgment in the circuit court in favor of Eva J. Havard, plaintiff, and it is before this court on petition of defendant for writ of certiorari to review that judgment.

The petitioner, the defendant, insists the writ should be awarded and the judgment reversed because the tort which produced decedent's death was a maritime tort; the services which he was performing at the time of the accident were maritime in character, and his contract of employment with defendant was a maritime contract; and therefore admiralty had exclusive jurisdiction of the cause of action.

That question has been considered and passed on two or three times by this court on former application for writ of certiorari. Ex parte Havard, 211 Ala. 605, 100 So. 897. It was presented then on demurrers to the amended complaint. It appeared from the complaint as amended that the contract of decedent with defendant was to grade and tally lumber as it was removed from the barges on the Mobile river into the planing mill of the defendant on the bank of the river, and decedent, when injured, was standing on a schooner moored in this river, performing his duties under his employment, tallying and grading lumber, which was being unloaded from a barge into the mill. A tug boat was nearby waiting to remove the barge when the lumber in it was unloaded, and on this tug boat a negro, a member of its crew, was handling a pistol or rifle which accidentally exploded, the ball from it striking Fritz R. Havard in the head, wounding him so that he died in a few hours.

The facts alleged in the amended complaint fully appear in the former opinion, as reported in 211 Ala. 605. [1] This court on that hearing finally held the contract as presented by the amended complaint is not of a maritime nature, and the employé, the deceased, was only engaged in grading and tallying lumber, which may have been done as well upon the docks as upon the schooner, where he happened to be; and that "the locality of the injury is not the sole and exclusive test; the service to be performed must also be of a maritime nature"; and that the circuit court of the state had jurisdiction of the cause of action, and the Workmen's Compensation Act applied to it. Three of the justices did not concur in this holding of this court, as shown by the dissenting opinion 211 Ala. 605, 100 So. 897. No writ of error from it was prosecuted to the Supreme Court of the United States by the defendant.

It appeared, then, from the facts presented by the amended complaint, that the contract of decedent with defendant was only to grade and tally lumber as it was removed from barges in the Mobile river to the planing mill of the defendant on the bank of the river.

A different question is presented now under the facts found. It appears now from the facts found by the trial court, which are fully sustained and supported by the evidence, that:

"At the time of his death on August 24, 1922, the plaintiff's husband, Fritz R. Havard, was regularly in the employ of the decedent in the defendant's said business in the capacity of lumber inspector, checker, and grader. He was required to inspect, check, and tally lumber, which included the checking, grading, and tallying of lumber from barges from railroad cars and in the yards of the defendant, in the woods and at mills. He was also required to perform the duties of assistant shipping clerk. In the course of his said employment, and on August 24, 1922, he was directed by the manager of defendant's plant to check or grade some lumber which was on a barge tied to the wharf at defendant's plant. This barge was afloat in Mobile river, which is a navigable stream, and to her outer or river side a laden schooner, the 'Corinthia,' of British or Honduran registry, was tied or lashed. * * * The lumber which Mr. Havard was checking when shot was not on the schooner but on the barge, which, as before stated, was tied between the schooner and the wharf. The operation of checking involves getting the lengths and sizes of the lumber, and sometimes getting the grades as well. Mr. Havard was not doing any of the physical labor of moving the lumber, and the service he was performing when shot could have been performed as well on the dock or wharf as on the barge or schooner. In the course of his said employment Mr. Havard was

[1] 100 So. 897.

sitting on the schooner with a pencil in one hand and a book in the other, tallying the lumber off the barge, while some negroes were taking the lumber off of the barge and carrying or carting it from thence into the defendant's plant or mill. While Mr. Havard was thus engaged in the course of his employment by the defendant, he was suddenly shot through the head, and, as a proximate result, died almost instantly. The shooting was accidental and arose out of his employment. A negro engineer on a tug or tow boat was cleaning his gun or pistol when it accidentally exploded, and as a proximate result of the explosion Havard was killed. This tug or tow boat was afloat laying in a slip or cut adjoining the defendant's plant, and belonged to one Powell, who also owned the barge whereon the lumber was laden which Havard was checking. The tow boat was waiting in the slip or cut for the purpose of towing away the barge from which the lumber aforesaid was being carried into the defendant's plant or to tow away or move other barges from which lumber was to be or had been unloaded into said plant. The barge on which was laden the lumber which the said Fritz R. Havard was checking came to defendant's wharf from up Mobile river."

[1] This finding of the trial court shows that the contract of employment and the services to be performed under it had no direct relation to navigation, and that it was not a maritime contract. The defendant was running a planing mill, receiving lumber, and also shipping lumber. This contract was not maritime in its nature. The decedent was assistant shipping clerk. He inspected, checked, and tallied lumber from barges, from railroad cars in the yards of the defendant, in the woods, and at different mills. It was made and entered into by the parties with reference to this Workmen's Compensation Act of this state. The rights and liabilities of the parties under the contract, when considered as a whole, in its entirety, was nonmaritime in its nature, and was not intended by the parties to be a maritime contract. It is true the injury causing the death of the decedent was inflicted while he was standing or sitting on a schooner, moored in Mobile river, and while he was performing his duties under this contract; but the place of the injury is not the only test in determining whether the contract was maritime or nonmaritime in its nature. So we must hold, under the facts found by the trial court, the contract of employment was not a maritime contract, and the circuit court had jurisdiction of the cause of action, and the Workmen's Compensation Act is applicable. Ex parte Havard, 211 Ala. 605, 100 So. 897; Grant, Smith-Porter Co. v. Rohde, 257 U. S. 469, 42 S. Ct. 157, 66 L. Ed. 321, 25 A. L. R. 1008; North Pac. S. S. Co. v. Marine Ry. & S. B. Co., 249 U. S. 119, 39 S. Ct. 221, 63 L. Ed. 510; Robinson v. The Vanderbilt (D. C.) 86 F. 785, 794.

The petitioner insists the application should be granted and the judgment reversed, because there was no evidence introduced in the case from which the court could find that the accident or injury which produced his death arose out of his employment. The death of Fritz R. Havard must have been caused by an accident arising out of and in the course of his employment to entitle his widow to recover the compensation allowed under the statute. Section 1, Gen. Acts 1919, p. 206. As hereinbefore shown the trial court found and reported in its judgment that:

"While Mr. Havard was thus engaged in the course of his employment by the defendant, he was suddenly shot through the head, and as a proximate result died almost instantly. The shooting was accidental and arose out of his employment. A negro engineer on a tug or tow boat was cleaning his gun or pistol when it accidentally exploded, and as a proximate result of the explosion Havard was killed."

[2] This Court in Woodward Iron Co. v. Bradford, 206 Ala. 449, 90 So. 803, wrote:

"Alabama was among the last states to adopt the Workmen's Compensation law, which is in the nature of an insurance against injury, not self-inflicted, or due to drunkenness or willful misconduct of the employé."

And in Ex parte L. & N. R. R. Co., 208 Ala. 216, 94 So. 289, we find these statements by this court in discussing this statute:

"Legislative acts of the nature under consideration are remedial in character, and hence deserve and generally receive a 'broad interpretation' and application in concrete cases, consistent with the beneficent purpose such enactments have in view. * * * Overwrought refinements in administration should be avoided, since that process may conduce to the embarrassment, if not the defeat, of the beneficent purposes of remedial acts of this character."

This statute and these phrases, "arising out of and in the course of his employment," therein found, should be construed with breadth and liberality so as to advance as far as the statute will permit the beneficent objects intended by the act. Authorities supra. In Majestic Coal Co., 208 Ala. 91, 93 So. 728, this court stated:

"The Chief Justice conceded that it was 'not easy nor necessary * * * to give a comprehensive definition of these words (injury arising out of and in the course of his employment) which shall accurately include all cases embraced within the act, and with precision exclude those outside its terms,' supplying the definition of an injury as being that received 'in the course of' the employment when it comes while the workman is doing the duty which he is employed to perform, and that 'it arises out of' the employment when there is 'apparent to the rational mind upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury,' which followed as a natural incident of the work, and to have been contemplated by

a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment."

[3] The deceased was killed while engaged in his contract work for the defendant. It is clear from the evidence, and the court properly found, that he received the injury which caused his death in the course of his employment. He was checking and tallying lumber as it was removed from this barge under his contract of employment with the defendant. His duties under his contract called him to this place, where tug boats loaded with lumber were waiting, and where schooners, tugs, and barges with crews were coming and going. This exposed him to hazards from loafing and working crews on these boats, to which he would not otherwise have been subjected. The Mobile river is a navigable stream, a public place in its nature for boats. It placed him in contact with the different crews of the different tug boats and schooners on this river at this place. It is evident from the evidence the decedent would not have been at that locality at the time the pistol was fired, accidentally, but for his employment by the defendant. His employment by the defendant contributed proximately in causing his injury. By reason of his employment he was exposed to this hazard, which was a natural incident of his work at that place, and which he would not probably have otherwise encountered. It is reasonably apparent from the entire evidence that the decedent would not have received this injury but for this contract of employment of him by defendant. So we must hold the trial court could, as it did, with reason, from the evidence, infer that the injury causing his death arose out of his employment within the spirit, purpose, and meaning of this Workmen's Compensation Act. Authorities, supra.

The petition for writ of certiorari is denied, and the judgment is affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.

