## DAVIS *v.* DEPARTMENT OF LABOR AND INDUSTRIES OF THE STATE OF WASHINGTON.

No. 86.   Argued November 18, 1942.—Decided December 14, 1942.

*Mr. Alfred J. Schweppe,* with whom *Messrs. Maurice P. McMicken* and *Otto B. Rupp* were on the brief, for petitioner.

*Mr. Edward S. Franklin,* Assistant Attorney General of the State of Washington, with whom *Messrs. Smith Troy,* Attorney General, and *T. H. Little,* Assistant Attorney General, were on the brief, for respondent.

MR. JUSTICE BLACK delivered the opinion of the Court.

In this case the Washington Supreme Court held that the State could not, consistently with the Federal Constitution, make an award under its state compensation law to

the widow of a workman drowned in a navigable river. The circumstances which caused the court to reach this conclusion were these:

The petitioner's husband, a structural steelworker, was drowned in the Snohomish River while working as an employee of the Manson Construction and Engineering Company, a contributor to the Workmen's Compensation Fund of the State of Washington. Contributions of Washington employers to this Fund are compulsory in certain types of occupations, including the job for which the deceased had been employed. Rem. Rev. Stat. (1932) § 7674. That job was to dismantle an abandoned drawbridge which spanned the river. A part of the task was to cut steel from the bridge with oxyacetylene torches and move it about 250 feet away for storage there to await delivery to a local purchaser. The steel when cut from the bridge was lowered to a barge by a derrick; and when loaded, the barge was to be towed by a tug, hauled by cable, or, if the the current made it necessary, both towed and hauled to the storage point. Three vessels which had been brought there along the stream, for use by the employer in the work—a tug, derrick barge, and a barge,—were all licensed by the U. S. Bureau of Navigation. The derrick barge was fastened to the bridge; the barge was tied to the derrick barge. Deceased had helped to cut some steel from the bridge and, at the time of the accident, was working on the barge, which had not yet been completely loaded for its first carriage of steel to the place of storage. His duty appears to have been to examine the steel after it was lowered to the barge and, when necessary, to cut the pieces to proper lengths. From this barge he fell or was knocked into the stream in which his body was found.

The Washington statute provides compensation for employees and dependents of employees, such as decedent, if its application can be made "within the legislative jurisdiction of the state." A further statement of coverage

applies the Act to "all employers or workmen . . . engaged in maritime occupations for whom no right or obligation exists under the maritime laws." Rem. Rev. Stat., §§ 7674, 7693a. A line of opinions of this Court, beginning with *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205, 216, held that under some circumstances states could, but under others could not, consistently with Article III, Par. 2 of the Federal Constitution,[1] apply their compensation laws to maritime employees. State legislation was declared to be invalid only when it "works material prejudice to the characteristic features of the general maritime law or interferes with the proper harmony and uniformity of that law in its international and interstate relations." When a state could, and when it could not, grant protection under a compensation act was left as a perplexing problem, for it was held "difficult, if not impossible," to define this boundary with exactness.

With the manifest desire of removing this uncertainty so that workers whose duties were partly on land and partly on navigable waters might be compensated for injuries, Congress on October 6, 1917, five months after the *Jensen* decision, passed an Act attempting to give such injured persons "the rights and remedies under the workmen's compensation law of any state." 40 Stat. 395. May 17, 1920, this Court declared the Act unconstitutional. *Knickerbocker Ice Co.* v. *Stewart,* 253 U. S. 149. June 10, 1922, 42 Stat. 634, Congress made another effort to permit state compensation laws to protect these waterfront employees, but this second effort was also held invalid. *State of Washington* v. *W. C. Dawson & Co.,* 264 U. S. 219. March 4, 1927, came the federal Longshoremen's and Harbor Workers' Act, 33 U. S. C. § 901 *et seq.* Here again, however, Congress made clear its purpose to

---

[1] This Article extends the jurisdiction of federal courts "to all cases of admiralty and maritime Jurisdiction."

permit state compensation protection whenever possible, by making the federal law applicable only "if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by state law."

Harbor workers and longshoremen employed "in whole or in part upon the navigable waters" are clearly protected by this federal act; but employees such as decedent here, occupy that shadowy area within which, at some undefined and undefinable point, state laws can validly provide compensation. This Court has been unable to give any guiding, definite rule to determine the extent of state power in advance of litigation, and has held that the margins of state authority must "be determined in view of surrounding circumstances as cases arise." *Baizley Iron Works* v. *Span*, 281 U. S. 222, 230. The determination of particular cases, of which there have been a great many, has become extremely difficult. It is fair to say that a number of cases can be cited both in behalf of and in opposition to recovery here.[2]

[2] Cases which lend strength to petitioner's position are: *Sultan Railway & Timber Co.* v. *Dept. of Labor*, 277 U. S. 135; *Grant Smith-Porter Co.* v. *Rohde*, 257 U. S. 469; *Millers' Underwriters* v. *Braud*, 270 U. S. 59; *Ex parte Rosengrant*, 213 Ala. 202, 104 So. 409, affirmed 273 U. S. 664; *State Industrial Board of N. Y.* v. *Terry & Tench Co.*, 273 U. S. 639, reported as *Lahti* v. *Terry & Tench Co.*, 240 N. Y. 292, 148 N. E. 527; *Alaska Packers Assn.* v. *Industrial Accident Commission*, 276 U. S. 467. And note the dissenting view in *Baizley Iron Works* v. *Span, supra; U. S. Casualty Co.* v. *Taylor*, 64 F. 2d 521, cert. den. 290 U. S. 639; *New Amsterdam Casualty Co.* v. *McManigal*, 87 F. 2d 332; *In re Herbert*, 283 Mass. 348, 186 N. E. 554. Cases aiding respondent's view: *Baizley Iron Works* v. *Span*, 281 U. S. 222; *Gonsalves* v. *Morse Dry Dock Co.*, 266 U. S. 171; *Nogueira* v. *N. Y., N. H. & H. R. Co.*, 281 U. S. 128; *Northern Coal Co.* v. *Strand*, 278 U. S. 142; *Employers' Liability Assurance Co.* v. *Cook*, 281 U. S. 233. For a number of state cases supporting each position, see the Circuit Court opinion in *Motor Boat Sales* v. *Parker*, 116 F. 2d 789. For discussion of the problem, see Morrison, Workmen's Compensation and the Maritime Law, 38 Yale L. J. 472.

The very closeness of the cases cited above, and others raising related points of interpretation, has caused much serious confusion.[3] It must be remembered that under the *Jensen* hypothesis, basic conditions are factual: Does the state law "interfere with the proper harmony and uniformity of" maritime law? Yet, employees are asked to determine with certainty before bringing their actions that factual question over which courts regularly divide among themselves and within their own membership. As penalty for error, the injured individual may not only suffer serious financial loss through the delay and expense of litigation, but discover that his claim has been barred by the statute of limitations in the proper forum while he was erroneously pursuing it elsewhere. See e. g., *Ayres* v. *Parker,* 15 F. Supp. 447. Such a result defeats the purpose of the federal act, which seeks to give "to these hardworking men, engaged in a somewhat hazardous employ-. ment, the justice involved in the modern principle of compensation," and the state Acts such as the one before us, which aims at "sure and certain relief for workmen."[4]

[3] State industrial commissions have found real difficulty in determining their proper function in respect to maritime accidents. See the discussion of this problem at the 19th Annual Meeting of the International Association of Industrial Accident Boards and Commissions, Bull. 577 of the Bureau of Labor Statistics, p. 119 (1933). A question not mentioned above which has been considered in several cases is that of the jurisdiction to which are to be assigned accidents affecting persons loading boats while on the wharf; accidents affecting persons loading vessels while on the vessel; accidents affecting persons standing on either the vessel or the wharf who are knocked into the water. *Smith & Son* v. *Taylor,* 276 U. S. 179; *Vancouver S. S. Co.* v. *Rice,* 288 U. S. 445; *Minnie* v. *Port Huron Terminal Co.,* 295 U. S. 647.

[4] For this expression of federal policy, see the report of the Senate Committee on the Judiciary on the Longshoremen's and Harbor Workers' Compensation Act, S. R. 973, 69th Cong., 1st Sess., 16. For the expression of public policy of the Washington Act, see Rem. Rev. Stat. (1932) § 7673.

The horns of the jurisdictional dilemma press as sharply on employers as on employees. In the face of the cases referred to above, the most competent counsel may be unable to predict on which side of the line particular employment will fall. The employer's contribution to a state insurance fund may therefore wholly fail to protect him against the liabilities for which it was specifically planned. If this very case is affirmed, for example, the employer will not only lose the benefit of the state insurance to which he has been compelled to contribute and by which he has thought himself secured against loss for accidents to his employees; he must also, by virtue of the conclusion that the employee was subject to the federal act at the time of the accident, become liable for substantial additional payments. He will also be subject to fine and imprisonment for the misdemeanor of having failed, as is apparently the case, to secure payment for the employee under the federal act. 33 U. S. C. §§ 938, 932.

We are not asked here to review and reconsider the constitutional implications of the *Jensen* line of decisions. On the contrary, even the petitioner argues that such action might bring about still worse confusion in an already uncertain field, and points out that state and federal agencies have made real progress toward closing the gap. There is much force in this argument. Since 1917, Congress and the states have sought to restore order out of the confusion which resulted from the *Jensen* decision. That success has not finally been achieved is illustrated by the present case. The Longshoremen's Act, passed with specific reference to the *Jensen* rule, provided a partial solution. The Washington statute represents a state effort to clarify the situation. Both of these laws show clearly that neither was intended to encroach on the field occupied by the other. But the line separating the scope of the two being undefined and undefinable with exact

precision, marginal employment may, by reason of particular facts, fall on either side. Overruling the *Jensen* case would not solve this problem. In our decision in *Parker* v. *Motor Boat Sales,* 314 U. S. 244, we held that Congress has by the Longshoremen's Act accepted the *Jensen* line of demarcation between state and federal jurisdiction. Obviously, the determination of the margin becomes no simpler because the standard applied is considered to be embedded in a statute rather than in the Constitution. Nor can we gain assistance in this circumstance from the clause in the federal act which makes that act exclusive. 33 U. S. C. § 905. That section gains meaning only after a litigant has been found to occupy one side or the other of the doubtful jurisdictional line, and is no assistance in discovering on which side he can properly be placed.

There is, in the light of the cases referred to, clearly a twilight zone in which the employees must have their rights determined case by case, and in which particular facts and circumstances are vital elements. That zone includes persons such as the decedent who are, as a matter of actual administration, in fact protected under the state compensation act.

Faced with this factual problem we must give great—indeed, presumptive—weight to the conclusions of the appropriate federal authorities and to the state statutes themselves. Where there has been a hearing by the federal administrative agency entrusted with broad powers of investigation, fact finding, determination, and award, our task proves easy. There, we are aided by the provision of the federal act, 33 U. S. C. § 920, which provides that, in proceedings under that act, jurisdiction is to be "presumed, in the absence of substantial evidence to the contrary." Fact findings of the agency, where supported by the evidence, are made final. Their conclusion that a case falls within the federal jurisdiction is therefore

entitled to great weight and will be rejected only in cases of apparent error. It was under these circumstances that we sustained the Commissioner's findings in *Parker v. Motor Boat Sales, supra.*

In the instant case, we do not enjoy the benefit of federal administrative findings and must therefore look solely to state sources for guidance. We find here a state statute which purports to cover these persons, and which indeed does cover them if the doubtful and difficult factual questions to which we have referred are decided on the side of the constitutional power of the state. The problem here is comparable to that in another field of constitutional law in which courts are called upon to determine whether particular state acts unduly burden interstate commerce. In making the factual judgment there, we have relied heavily on the presumption of constitutionality in favor of the state statute. *South Carolina Highway Dept.* v. *Barnwell Bros.,* 303 U. S. 177, 188, 191.[5]

The benefit of a presumption is also given in cases of conflict of state or state and territorial workmen's compensation acts under the Full Faith and Credit clause. There, as here, the issue is a factual one arising from a clash of interest of two jurisdictions. In such a case, involving the question of whether the California or the Alaska Workmen's Compensation Act should apply to a

---

[5] See for other examples of our application of this principle, *Southern Ry. Co.* v. *King,* 217 U. S. 524 (statute regulating operation of interstate train at crossings); *Pure Oil Co.* v. *Minnesota,* 248 U. S. 158 (statute requiring the inspection of certain petroleum products while in interstate commerce); *Interstate Busses Corp.* v. *Holyoke Ry. Co.,* 273 U. S. 45 (requirement of certificate of convenience and necessity for interstate carrier); *Interstate Busses Corp.* v. *Blodgett,* 276 U. S. 245 (state statute taxing interstate carrier); *Railway Express Agency* v. *Virginia,* 282 U. S. 440 (statute requiring corporation to hold local charter). For state commerce regulations approved by this Court, see the *Barnwell* case, *supra,* p. 188, n. 5.

resident of California injured in Alaska who brought suit in California, this Court has said: "The enactment of the present statute of California was within state power and infringes no constitutional provision. *Prima facie* every state is entitled to enforce in its own courts its own statutes, lawfully enacted." *Alaska Packers Assn.* v. *Industrial Commission,* 294 U. S. 532, 547. And see *Pacific Ins. Co.* v. *Industrial Commission,* 306 U. S. 493, 503.

Not only does the state act in the instant case appear to cover this employee, aside from the constitutional consideration, but no conflicting process of administration is apparent. The federal authorities have taken no action under the Longshoremen's Act, and it does not appear that the employer has either made the special payments required or controverted payment in the manner prescribed in the Act. 33 U. S. C. § 914 (b) and (d). Under all the circumstances of this case, we will rely on the presumption of constitutionality in favor of this state enactment; for any contrary decision results in our holding the Washington act unconstitutional as applied to this petitioner. A conclusion of unconstitutionality of a state statute can not be rested on so hazardous a factual foundation here, any more than in the other cases cited.

Giving the full weight to the presumption, and resolving all doubts in favor of the Act, we hold that the Constitution is no obstacle to the petitioner's recovery. The case is remanded for proceedings not inconsistent with this opinion.

*Reversed.*

MR. JUSTICE FRANKFURTER, concurring:

Any legislative scheme that compensates workmen or their families for industrial mishaps should be capable of simple and dependable enforcement. That was the aim of Congress when, with due regard for the diverse conditions in the several States, it afforded to harbor-workers the

benefits of state workmen's compensation laws. Act of October 6, 1917, c. 97, 40 Stat. 395, as amended by the Act of June 10, 1922, c. 216, 42 Stat. 634. But *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205, and cases following, frustrated this purpose.

Such a desirable end cannot now be achieved merely by judicial repudiation of the *Jensen* doctrine. Too much has happened in the twenty-five years since that ill-starred decision. Federal and state enactments have so accommodated themselves to the complexity and confusion introduced by the *Jensen* rulings that the resources of adjudication can no longer bring relief from the difficulties which the judicial process itself brought into being. Therefore, until Congress sees fit to attempt another comprehensive solution of the problem, this Court can do no more than bring some order out of the remaining judicial chaos as marginal situations come before us. Because it contributes to that end, I join in the Court's opinion.

Theoretic illogic is inevitable so long as the employee in a situation like the present is permitted to recover either under the federal act (cf. *Parker* v. *Motor Boat Sales,* 314 U. S. 244; *Northern Coal Co.* v. *Strand,* 278 U. S. 142; *Nogueira* v. *N. Y., N. H. & H. R. Co.,* 281 U. S. 128; *Employers' Liability Assurance Co.* v. *Cook,* 281 U. S. 233) or under a state statute (cf. *Millers' Underwriters* v. *Braud,* 270 U. S. 59; *Alaska Packers Assn.* v. *Accident Comm'n,* 276 U. S. 467). That is the practical result, whether it be reached by the Court's path or that apparently left open under the Chief Justice's views. It is scant comfort to an employer that he may find he has committed a misdemeanor in not posting a bond as required by the federal act because he may have been advised, not unnaturally, that under the prior rulings of this Court the activities of his employees were local in nature and hence he could be sued only under state law.

Mr. Chief Justice Stone:

Any effort to lessen the uncertainties and complexities which have followed in the wake of the *Jensen* decision and its successors during the past twenty-five years deserves sympathetic consideration. But in the present state of the law, the Court's attempt to remove them by construing state workmen's compensation acts and the Longshoremen's and Harbor Workers' Act so that their coverages overlap, can hardly be deemed to be within judicial competence.

Section 3 of the Longshoremen's Act, 33 U. S. C. § 903, authorizes payment of compensation "only . . . if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law." In *Parker* v. *Motor Boat Sales*, 314 U. S. 244, 250, we held, as a matter of construction of this clause of the statute, that it had adopted the rationale of *Jensen* and its followers, regardless of their constitutional validity, as "the measure by which Congress intended to mark the scope of the Act they brought into existence." We thus decided that, if by the application of the *Jensen* doctrine recovery could not constitutionally be had under state laws, the federal act conferred a right of recovery whether or not the *Jensen* decision was sound.

The Court's opinion in the present case seems to proceed upon the assumption that, if petitioner had filed a claim under the federal act, and the federal commissioner had awarded compensation, we would sustain his ruling, although the Court now holds that the state authorities erroneously concluded they were without constitutional power to make the award. Indeed, after our decision in *Parker* v. *Motor Boat Sales, supra,* petitioner's right of recovery under the federal act can hardly be doubted: not only could a federal commissioner properly decide

in favor of jurisdiction, but any candid application of the *Jensen* rule would seem to compel reversal of a federal commissioner who declined jurisdiction. See *Northern Coal Co.* v. *Strand*, 278 U. S. 142, and *Employers' Liability Assurance Co.* v. *Cook*, 281 U. S. 233, both cited to justify the federal award in the *Motor Boat* case, 314 U. S. at 247.

Congress by the enactment of the Longshoremen's and Harbor Workers' Act has left no room for an overlapping dual system of the sort which the Court now espouses by placing its decision on a new doctrine that recovery under either the state or the federal act is to be sustained if the case is thought a close one. Section 5 of the Act, 33 U. S. C. § 905, provides that the employer's liability under it "shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death . . ." See *Nogueira* v. *N. Y., N. H. & H. R. Co.*, 281 U. S. 128, 137. I cannot say that this section does not mean what it says. If there is liability under the federal act, that liability is exclusive. It follows that, in any case in which compensation might have been awarded under the federal act, a recovery under state law is in plain derogation of the terms of the federal statute, as construed in the *Motor Boat* case, *supra*.[1] Congress has made it our duty, before we sanction a recovery under state law, to ascertain that an award under the federal act can not be had.

---

[1] The Washington statute explicitly recognizes the exclusiveness of the federal statute, for in its coverage of employees engaged in maritime occupations it is made applicable only to those "for whom no right or obligation exists under the maritime laws." § 7693a.

The proposition that an employee in a "twilight zone" (where it is doubtful whether the federal or a state act applies) can recover under either act, not only controverts the words of the statute but also imposes an unauthorized burden on the employer. Besides being subjected to a liability which the statute forbids, he is compelled, in order to protect himself in the large number of cases in which the Court apparently would allow recovery under either act, to comply with both. Under the federal act, the employer must post security for compensation in a manner specified in § 32, 33 U. S. C. § 932, and failure to do so is a misdemeanor, § 38, 33 U. S. C. § 938, punishable by fine and imprisonment. Under state acts, there is an obligation to contribute insurance premiums, or take some comparable step, to say nothing of penal sanctions which a state may impose.

Congress has directed that if the case is within the federal statute, the employer shall be relieved of all other obligation. But in order to relieve the employee in a doubtful case of the necessity of filing two claims, one under each act, a double burden is imposed on the employer by an inadmissible construction of the federal act. The dual system of presumptions, which are to operate in favor of the employee, but apparently never against him, will serve to sustain an exercise of either state of federal jurisdiction in every case within the so-called "twilight zone." But this is accomplished only by depriving employers of the immunity which Congress sought to confer when it set up a system in which federal and state acts are made mutually exclusive.

Although the basic question in these cases is said to be "factual," the twilight zone doctrine does not reveal how—in view of the great weight which is to be given the federal commissioner's finding, as in the *Motor Boat* case— we can in this case disregard the findings of four state

tribunals,[2] or what the function of this Court is to be in cases where the federal and the state commissioners both find against jurisdiction, or how the line which marks the doubtful case is to be drawn more readily than that which, under the *Jensen* doctrine, separates state from federal power.

Notwithstanding the ruling in the *Motor Boat* case that Congress had adopted the *Jensen* boundary of federal jurisdiction, there are in the present case special circumstances which take it out of that ruling and leave us free to reconsider *Jensen's* constitutional basis. The exclusive liability section of the federal statute contains a proviso that if the employer fails to give security for payment of compensation, as required, then the employee may elect to claim compensation under the federal statute, "or to maintain an action at law or in admiralty." The purpose of this proviso seems to be to preserve to the employee all remedies which he might otherwise have had, in the event that the employer does not give the prescribed security. Since this record does not show that the employer complied, petitioner is free to pursue any available remedy which the Constitution permits and which the state may choose to afford.

Only if the Court were to overrule the *Jensen* case in its constitutional aspects could I join in a reversal of the judgment here. If we are to continue to apply the *Jensen*

---

[2] The state supervisor found that "after thorough investigation it has been determined that the work which the claimant was doing at the time of the said fatal accident does not come under the jurisdiction of the workmen's compensation act, but is maritime in character" and "that the alleged injury was sustained on board a vessel in navigable waters and was therefore under admiralty jurisdiction." His finding and decision were sustained by the joint board of the state department of labor and industries, the state superior court, and the state supreme court.

doctrine, even when not required to do so by the federal act, then our own decisions, including the recent *Motor Boat* case, preclude a reversal of the Washington courts. Escape from *Jensen's* embarrassments by the adoption of the twilight zone doctrine, in disregard of the jurisdictional command of the federal statute, is plainly not permissible. I am not persuaded that it is practicable.