In the Matter of the Claim of MARION HAMMOND, Appellant, against ALBANY GARAGE COMPANY et al., Respondents. STATE INDUSTRIAL BOARD, Respondent.

Third Department, May 3, 1944.

*John J. Conway,* attorney (*Harold J. Hinman* of counsel), for claimant-appellant.

*Merton D. Meeker,* attorney for employer and insurance carrier, respondents.

*Nathaniel L. Goldstein, Attorney-General,* for State Industrial Board, respondent.

HEFFERNAN, J. The widow of a deceased workman has appealed from a decision of the State Industrial Board disallowing her claim for compensation on the ground that her husband at the time he received fatal injuries was engaged in work of a maritime character and that the State has no authority to entertain the claim because the case comes within admiralty jurisdiction.

Claimant's husband was employed as a refrigerating serviceman by the Albany Garage Company. The employer was engaged in the general garage business and as part of its operations it conducted a refrigerator department and was a factory branch for the Kelvinator Company.

Most of the refrigerator service work was done by the employer on land — in hotels, homes and manufacturing plants — but at times its servicemen worked on refrigerator units on vessels. A boat job however was " a little unusual."

Sometime prior to the date of the accident involved in this appeal deceased was called upon to do some work on the refrigerator unit on a Standard Oil Company tanker named " Poughkeepsie-Socony " at the dock of the company on the Hudson River at the Port of Albany. The refrigerator had sprung a leak and the Freon gas had seeped out and it developed that a new expansion valve in the refrigerator was required to make the necessary repairs. Deceased fixed the leak but the employer had neither Freon gas nor an expansion valve on hand so he recharged the refrigerator with sulphur dioxide gas.

The boat returned to the Port of Albany on the evening of June 11, 1937, and the employer was again requested to make further repairs to the refrigerator unit, including the installation of a new valve.

Deceased and other servicemen of the employer met the boat when it arrived at the Standard Oil Company's dock in the navigable waters of the Hudson River.

In repairing the refrigerator it was found necessary to withdraw the sulphur dioxide gas which had previously been used and to substitute therefor Freon gas. The refrigerator was originally designed for ammonia and the valve was not suitable for the Freon gas which was being used and consequently a change was necessary.

In removing the sulphur dioxide gas a rubber hose was used. Apparently the hose was not long enough and a piece of pliable copper tubing was inserted at the end. While the sulphur dioxide gas was being expelled the rubber hose and tubing parted with the result that the escaping liquid struck decedent in the face, causing him to sustain injuries which, it is said, resulted in his death due to asphyxiation on June 14, 1937. He left surviving claimant and a posthumous son born October 11, 1937.

In the case before us it is conceded that the tanker " Poughkeepsie-Socony " was a self-propelled cargo boat carrying petroleum and liquid products. It was licensed to travel in any waters on Long Island Sound, the Atlantic coast, the Hudson River, the Barge Canal, Lake Champlain and the Great Lakes by the United States Department of Commerce. United States local inspectors annually inspected the vessel as to seaworthiness and engine room, and all equipment on it such as life preservers and lifeboat facilities, and they issued a certificate of license and enrollment under which the boat was operated.

The boat was built in 1934. It had been operated on the Barge Canal and the Great Lakes prior to June 11, 1937. At the time it was built this refrigerator box was placed in it. The box was in the engine room, located below deck in the stern of the boat and " was attached to the boat — in other words bolted down to the floor of the engine room."

On the trial the insurance carrier objected to the jurisdiction of the Industrial Board on the ground that the accident happened on a boat on navigable waters and that the claim, therefore, comes within Federal maritime and admiralty jurisdiction. The Industrial Board adopted that view and, without passing on any other issues involved, disallowed the claim on the sole ground of lack of jurisdiction.

Once again we are confronted with the perplexing problem — a problem which apparently will not down — as to just when a particular piece of work is maritime or nonmaritime. The subject is so confused by conflicting decisions in courts of repute that authorities may be found to sustain either conclusion on substantially the same facts. Much of this confusion

has its roots in the decision of the United States Supreme Court in *Southern Pacific Co.* v. *Jensen* (244 U. S. 205) in which that court, by a bare majority, held that under some circumstances States could, but under others could not, consistent with article 3, section 2, of the Federal Constitution, apply their compensation laws to maritime employees. State legislation was declared to be invalid only when it " works material prejudice to the characteristic features of the general maritime law or interferes with the proper harmony and uniformity of that law in its international and interstate relations." When a State could and when it could not grant protection under a compensation act was left as a perplexing problem for it was held " difficult, if not impossible " to define this boundary with exactness.

In an effort to lessen the uncertainties and complexities which followed in the wake of the *Jensen* decision so that workers whose duties were partly on land and partly on navigable waters might be compensated for injuries, Congress on October 6, 1917 (40 U. S. Stat. 395, ch. 97) adopted an amendment to the saving clause contained in section 256 of the Judicial Code which was also contained in the original Judiciary Act of 1789. To the old provision " saving to suitors, in all cases, the right of a common-law remedy, where the common law is competent to give it," was added " and to claimants the rights and remedies under the workmen's compensation law of any State."

This act was declared unconstitutional. (*Knickerbocker Ice Co.* v. *Stewart*, 253 U. S. 149.)

Following the *Stewart* decision Congress made a further attempt to evade the rigid restriction imposed upon it with respect to uniformity. On June 10, 1922, an act was adopted (42 U. S. Stat. 635, ch. 216, U. S. Code, tit. 28, § 371) which re-enacted the provision of the Act of 1917, saving to claimants their rights and remedies under the Workmen's Compensation Law of any State, but excepted from its operation " the master or members of the crew of a vessel." This act was likewise declared unconstitutional. (*Washington* v. *Dawson & Co.*, 264 U. S. 219.)

To overcome the effect of these decisions Congress on March 4, 1927, passed the Federal Longshoremen's and Harbor Workers' Compensation Act. (44 U. S. Stat. 1424, U. S. Code, tit. 33, § 901 *et seq.*) Here again Congress made clear its purpose to permit State compensation protection whenever possible by making the Federal law applicable only " if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law."

Harbor workers and longshoremen employed "in whole or in part upon the navigable waters" are clearly protected by this Federal Act; but employees, such as decedent here "occupy that shadowy area within which, at some undefined and undefinable point, state laws can validly provide compensation." The Supreme Court has declared that it is unable to give any guiding, definite rule to determine the extent of state power in advance of litigation, and has held that the margins of state authority must "be determined in view of surrounding circumstances as cases arise." (*Davis* v. *Department of Labor*, 317 U. S. 249.)

We disagree with the contention of the carrier and with the decision of the State Industrial Board. In our opinion the State of New York has jurisdiction to adjudicate the merits of the claim.

The casual task of decedent on this vessel involved no repair of any part of the structure of the vessel itself or even of any equipment essential to navigation and commerce. The repair of the ship itself, such as repairs to a boiler, preparation of the ship to receive cargo, repairs to the steering apparatus, repair of a leak of the ship, repair of the motive unit in any of its parts, have a direct bearing on navigation and commerce.

The refrigerator box which was being repaired was not an integral part of the vessel except in the sense that it was bolted to the floor so that it would remain stationary. It is a modern contrivance installed for the comfort and convenience of the occupants of the boat. It is not related to the seaworthiness of the vessel or its essential equipment for navigation and commerce. It has no direct relation to commerce and navigation or to any characteristic feature of the general maritime law, which was developed long before there was such an appliance. Then, too, it could have been removed from the vessel for repairs.

In the case before us neither the deceased's general employment nor his activities had any direct relation to navigation or commerce. They were maritime in character only to the extent that he was working on board a vessel lying in navigable waters. His principal employment pertained to local matters having only an incidental relation to navigation. The matter here involved was purely local and the application of the State Compensation Law would not work material prejudice to any characteristic feature of the general maritime law or interfere with its proper harmony or uniformity. (*Grant Smith-Porter Co.* v. *Rohde*, 257 U. S. 469; *Millers' Underwriters* v. *Braud*, 270 U. S. 59; *Rosengrant* v. *Havard*, 273 U. S. 664; *Alaska Packers*

*Assn.* v. *Accdt. Comm.,* 276 U. S. 467; *Sultan Ry. Co.* v. *Dept. of Labor,* 277 U. S. 135; *Davis* v. *Department of Labor, supra; Matter of Dimino* v. *Independent Warehouses, Inc.,* 284 N. Y. 481; *Matter of Hawkins* v. *Raynor,* 261 App. Div. 1011, affd. 286 N. Y. 575.)

In the *Grant Smith-Porter Co.* case (*supra*) a workman employed generally as a carpenter was injured through his employer's negligence while engaged in construction work on a ship nearly completed and launched and lying in navigable waters. It was held that, notwithstanding '' the general admiralty jurisdiction extends to a proceeding to recover damages resulting from a tort committed on a vessel in process of construction when lying on navigable waters within a State '' the matter was of mere local concern and its regulation by the State would work no material prejudice to any characteristic feature of the general maritime law. The court stated that '' the parties contracted with reference to the State statute; their rights and liabilities had no direct relation to navigation, and the application of the local law cannot materially affect any rules of the sea whose uniformity is essential.''

In *Millers' Underwriters* case (*supra*) a diver was submerged from a floating barge in a river to saw off the timbers of an abandoned set of ways, used for launching ships, which had become an obstruction to navigation. While submerged he died of suffocation. The court held that although a maritime tort was involved, '' the matter is of mere local concern and its regulation by the State will work no material prejudice to any characteristic feature of the general maritime law,'' following the principle laid down in *Grant Smith-Porter Co.* v. *Rohde* (*supra*).

The *Rosengrant* case (*supra*) was affirmed on the authority of *Grant Smith-Porter Co.* v. *Rohde* (*supra*) and *Millers' Underwriters* v. *Braud* (*supra*). In that case the injured man was employed as a lumber inspector and checker. At the time of the injury he was sitting on a moored vessel tallying lumber, which was being removed from a barge alongside. It was held by the Supreme Court of Alabama (*Ex Parte Rosengrant,* 213 Ala. 202) that this work, which could just as well have been done on land, was local in character, and that the employment was governed by the State Workmen's Compensation Act.

It is quite significant that the work of the decedent in our case could just as well have been done on land.

In *Alaska Packers Assn.* case (*supra*) an employee, working under a maritime contract, was injured while pushing into

navigable water a boat which was partly in the water but resting on the land. The purpose was to float it to dock. *Grant Smith-Porter Co.* v. *Rohde* (*supra*) and *Millers' Underwriters* v. *Braud* (*supra*) were followed, the court saying: "When injured certainly he was not engaged in any work so directly connected with navigation and commerce that to permit the rights of the parties to be controlled by the local law [compensation statute] would interfere with the essential uniformity of the general maritime law. The work was really local in character."

The *Sultan Ry. Co.* case (*supra*) also followed the doctrine of those same cases. It involved men employed in log booming work on navigable water. The holding was that "where the employment, although maritime in character, pertains to local matters, having only an incidental relation to navigation and commerce, the rights, obligations and liabilities of the parties, as between themselves, may be regulated by local rules which do not work material prejudice to the characteristic features of the general maritime law or interfere with its uniformity."

The *Davis* case (317 U. S. 249, *supra*) involved a structural steelworker on a job of dismantling a bridge over a navigable river and who was killed when he fell, or was knocked, from a barge to which steel from the bridge was being lowered. The court reviewed the line of decisions beginning with the *Jensen* case (244 U. S. 205, *supra*) and also the efforts of Congress ripening in the Federal Longshoremen's and Harbor Workers' Compensation Act and stated: "The determination of particular cases, of which there have been a great many, has become extremely difficult. It is fair to say that a number of cases can be cited both in behalf of and in opposition to recovery here. [See cases cited in footnote.]

"The very closeness of the cases cited above, and others raising related points of interpretation, has caused much serious confusion. It must be remembered that under the *Jensen* hypothesis, basic conditions are factual: Does the State law 'interfere with the proper harmony and uniformity of' maritime law? Yet, employees are asked to determine with certainty before bringing their actions that factual question over which courts regularly divide among themselves and within their own membership. * * *. The horns of the jurisdictional dilemma press as sharply on employers as on employees. * * *.

" Since 1917, Congress and the States have sought to restore order out of the confusion which resulted from the *Jensen* decision. That success has not finally been achieved is illustrated by the present case. The Longshoremen's Act, passed with specific reference to the *Jensen* rule, provided a partial solution. The Washington statute represents a State effort to clarify the situation. Both of these laws show clearly that neither was intended to encroach on the field occupied by the other. But the line separating the scope of the two being undefined and undefinable with exact precision, marginal employment may, by reason of particular facts, fall on either side. Overruling the *Jensen* case would not solve this problem. *  *  *.

" There is, in the light of the cases referred to, clearly a twilight zone in which the employees must have their rights determined case by case, and in which particular facts and circumstances are vital elements. That zone includes persons such as the decedent who are, as a matter of actual administration, in fact protected under the state compensation act." The court closes the statement of its final conclusion as follows: " Not only does the state act in the instant case appear to cover this employee, aside from the constitutional consideration, but no conflicting process of administration is apparent. The federal authorities have taken no action under the Longshoremen's Act, and it does not appear that the employer has either made the special payments required or controverted payment in the manner prescribed in the Act. 33 U. S. C. § 914 (b) and (d). Under all the circumstances of this case, we will rely on the presumption of constitutionality in favor of this State enactment; for any contrary decision results in our holding the Washington act unconstitutional as applied to this petitioner. A conclusion of unconstitutionality of a state statute can not be rested on so hazardous a factual foundation here, any more than in the other cases cited."

Chief Justice STONE in a solitary dissent in speaking of the effect of the decision in this case said, *inter alia,* " Congress by the enactment of the Longshoremen's and Harbor Workers' Act has left no room for an overlapping dual system of the sort which the Court now espouses by placing its decision on a new doctrine that recovery under either the state or the federal act is to be sustained if the case is thought a close one."

In *Standard Dredging Co.* v. *Murphy* (319 U. S. 306) the court said that the " *Jensen* case has already been severely limited " by the *Davis* case (*supra*).

In the *Dimino* case (284 N. Y. 481, *supra*) a pier superintendent fell down a hatchway on a vessel which was being unloaded at a pier and received injuries from which he died. The Court of Appeals, in an opinion by Judge LOUGHRAN, held that the doctrine of the cases of *Grant Smith-Porter Co.* v. *Rohde* (257 U. S. 469, *supra*); *Millers' Underwriters* v. *Braud* (270 U. S. 59, *supra*) and *Rosengrant* v. *Havard* (273 U. S. 664, *supra*) ruled the *Dimino* case and sanctioned the conclusion of the State Industrial Board that Dimino "was not engaged in performing any work of a maritime character or nature and said work bore no relation to navigation but was a matter of local concern."

In the *Hawkins* case (261 App. Div. 1011, *supra*) a garage employee whose duties were to repair automobiles, small boats and engines, was drowned while navigating his employer's gasoline launch on Seatuck Cove, an arm of the ocean. Our court and the Court of Appeals affirmed the award. The carrier now seeks to distinguish that case on the ground that at the time of the fatal accident the boat which deceased was operating was not on navigable waters. It is true that the Industrial Board made such a finding but that was not the basis of our decision nor that of the Court of Appeals. In fact, in our court Presiding Justice HILL in his dissent said that there was no evidence to sustain such a finding and Chief Judge LEHMAN in his dissenting memorandum said that the waters are navigable as a matter of law.

The respondent carrier is relying on *Great Lakes Co.* v. *Kierejewski* (261 U. S. 479); *Baizley Iron Works* v. *Span* (281 U. S. 222) and *Parker* v. *Motor Boat Sales* (314 U. S. 244). In the *Kierejewski* and *Span* cases the injured employees were engaged in making repairs to the vessel itself. Kierejewski, a boiler maker, was standing on a scaffold resting upon a float alongside a scow which he was repairing in navigable waters. A tug came near, swamped the float and he was drowned. Span was injured while painting a vessel lying in navigable waters. His work was being done under a contract of his employer to repair the floor of the engine room and to paint the engine room.

In the *Parker* case the court based its decision on the ground that a Federal administrative agency intrusted with broad powers of investigation, fact finding, determination and award, had concluded that the deceased employee, at the time he met his death, was engaged in a clearly maritime activity. In referring to the decision in the *Parker* case (*supra*) the court in the *Davis* case (317 U. S. 249, *supra*) said: "It was under these

circumstances that we sustained the Commissioner's findings in *Parker* v. *Motor Boat Sales, supra.*"

Obviously none of these cases is determinative of the issues in our case. Decedent here occupied " that shadowy area " within which our statute " can validly provide compensation."

The decision of the Industrial Board should be reversed on the law, with costs to appellant against respondents, employer and carrier, and the matter remitted to the Board to hear and determine the relevant issues in the case.

HILL, P. J., BLISS, SCHENCK and BREWSTER, JJ., concur.

Decision of the Industrial Board reversed on the law, with costs to appellant against respondents, employer and carrier, and matter remitted to the Industrial Board to hear and determine the relevant issues in the case.