**REPUBLIC AVIATION CORPORATION et al. v. LOWE et al.**

**No. 22, Docket 20645.**

Circuit Court of Appeals, Second Circuit.

Nov. 6, 1947.

John P. Smith, of New York City (Albert P. Thill, of New York City, of counsel) for plaintiffs-appellants.

John F. X. McGohey, U. S. Atty., of New York City (John F. Ryan, Asst. U. S. Atty., Ward E. Boote, Chief Counsel, U. S. Employees Compensation Commission, and Herbert P. Miller, Asst. Chief Counsel U. S. Employees Compensation Commission, all of New York City, of counsel), for Lowe, Deputy Commissioner.

Arthur P. West, of New York City for defendant-appellee Aida M. Parker.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The defendant Lowe, in his capacity as Deputy Commissioner of the United States Employees' Compensation Commission, Second Compensation District, made an order awarding compensation death benefits to the defendant Aida M. Parker, widow of Joseph Parker, a deceased employee of plaintiff Republic Aviation Corporation. The employer and its insurance carrier then brought suit in the District Court for the Southern District of New York, pursuant to 55 Stat. 623, 42 U.S.C.A. § 1653(b), to set aside and enjoin the enforcement of the compensation order. The district court granted the defendants' motion for a summary judgment dismissing the complaint, and the employer and its insurance carrier have appealed.

There was, and is, no dispute as to the facts. Those presently pertinent are:

The deceased, Joseph Parker, was employed as a test pilot and technician by Republic Aviation Corporation, which will hereinafter be called "Republic." Under a fixed price contract between the United States and Republic, the latter had agreed to furnish the services of technical representatives and test pilots to the United States Government for "supervision of, instruction in, and assistance with the assembly, operation, servicing, repair and alteration of aircraft and the parts thereof manufactured or designed by [Republic] * * * overseas at any place or places where, and when, said services are necessary to the interest of the Government as the Contracting Officer may direct. * * * "

It is stipulated that the armed forces of the United States had about April 1, 1945 invaded the island of Ia Shima, a Japanese possession, and at some time prior to August 20, 1945, the date upon which Parker was killed, were in possession and control of it. At about the same time, Republic was developing a new aircraft, the Republic P-47, and General Kenney of the United States Army Air Force requested that Parker be sent to the Far East to demonstrate this long-range fighter plane so that the maximum advantage could be obtained from it. Pursuant to the above-mentioned contract, Republic on August 4, 1945, sent Parker from its plant at Farmingdale, New York to Ia Shima. On August 20, 1945, Parker was killed while performing services under the contract, just after he took off from the Ia Shima air base in a flight to test long-range fuel consumption.

The power of the commission to make the award is questioned by the appellants on the ground that the deceased employee was not one of the persons covered by the applicable statute, the Defense Bases Compensation Act of August 16, 1941, 55 Stat. 622, as amended on December 2, 1942, 56 Stat. 1028, 1035, 42 U.S.C.A. §§ 1651–1654. As originally enacted, this statute extended the coverage of the Longshoremen's and Harbor Workers' Compensation Act, as amended, 33 U.S.C.A. § 901 et seq., to certain employees of contractors with the United States while engaged outside the continental United States in the performance of those contracts. We had but recently acquired the so-called lend-lease bases from Great Britain in exchange for fifty over-age destroyers and the principal purpose of the extension of the compensation statute was to protect civilians who worked in the construction of, and the necessary alterations at, those bases. But that this was not the sole purpose of the original act of August 16, 1941 is shown by the now apposite part of it which read

"Except as herein modified, the provisions of sections 901-921, 922-950 of Title 33, as amended, and as the same may be amended hereafter, shall apply in respect to the injury or death of any employee engaged in any employment at any military, air, or naval base acquired after January 1, 1940, by the United States from any foreign government or any lands occupied or used by the United States for military or naval purposes in any Territory or possession outside the continental United States, including Alaska, Guantanamo, and the Philippine Islands, but excluding the Canal Zone, irrespective of the place where the injury or death occurs." *

The amendment of December 2, 1942, above mentioned, changed the original provisions, in so far as is now material, to read as follows:

"Except as herein modified, the provisions of sections 901-921 and 922-950 of Title 33, as amended, shall apply in respect to the injury or death· of any employee engaged in any employment—

"(1) at any military, air, or naval base acquired after January 1, 1940, by the United States from any foreign government; or

"(2) * * *

"(3) * * *

---

* See also H.R. Rep. No. 1070, 77th Cong., 1st Sess. (p. 5):

"At the time the legislation was drafted, it was contemplated that its provisions would be made applicable only to the island bases acquired from Great Britain, however, the War and Navy Departments have requested the extension to the other lands and possessions for the reasons stated."

"(4) under a contract entered into with the United States or any executive department, independent establishment, or agency thereof (including any corporate instrumentality of the United States), or any subcontract, or subordinate contract with respect to such contract, where such contract is to be performed outside the continental United States and at places not within the areas described in subparagraphs (1), (2), and (3) of this subdivision, for the purpose of engaging in public work * * * but nothing in this paragraph shall be construed to apply to any employee of such contractor or subcontractor who is engaged exclusively in furnishing materials or supplies under his contract; irrespective of the place where the injury or death occurs, * * *

*"Definition of public work*

"(b) As used in this section, the term 'public work' means any fixed improvement or any project involving construction, alteration, removal, or repair for public use of the United States or its Allies, including but not limited to projects in connection with the war effort, dredging, harbor improvements, dams, roadways, and housing, as well as preparatory and ancillary work in connection therewith at the site or on the project."

The award was made on the theory that Parker was killed while working as the employee of a contractor under a contract within the scope of Sec. 1651(a)(4) for the purpose of engaging in public work as defined in Sec. 1651 (b). The trial judge refused to set aside the award and dismissed the complaint on the same theory. He declined, however, to hold that the award was properly made under Sec. 1651 (a)(1), because he considered that the word "acquired" was there used in only its technical, international law, rather than its usual, sense. That is to say, he restricted the word to the two meanings which it has in international law; one, an acquisition by cession, which, following Hackworth "Digest of International Law" (1940) Vol. 1', page 421, he defined as involving "the transfer of sovereignty by means of an agreement between the ceding and acquiring states"; two, an acquisition by conquest, which, also following Hackworth, id at p. 427, he defined as follows: "Conquest is the taking of possession of territory of any enemy state by force; it becomes a mode of acquisition of territory—and hence a transfer of sovereignty—only if the conquered territory is effectively reduced to possession and annexed by the conquering state." Thus the trial judge made the transfer of sovereignty an indispensable requisite to the acquisition of a base under 42 U.S.C.A. § 1651(a)(1) and, relying on the analogy of Fleming v. Page, 9 How. 603, 13 L.Ed. 276, reached the conclusion that the air base on Ia Shima had not been acquired by the United States, within the meaning of the statute, when Parker was killed.

We think this was too narrow a construction of the term and that Fleming v. Page, supra, which held that a foreign port acquired by conquest remained a foreign port for customs purposes, is not controlling. This statute is a remedial one and should be interpreted to accomplish so far as is possible the purposes for which it was intended. As its legislative history makes clear, part of its purpose was to make the benefits of the Longshoremen's and Harbor Workers' Act available to civilians employed at defense bases obtained from friendly powers, mainly from Great Britain, before we were at war. But even as to those we got from Great Britain, it has not yet been established that there was any cession of territory which involved a transfer of sovereignty. Rather, there was a so-called lend-lease transaction under which the United States became the lessee for a term. And as the term "acquired" in the statute was certainly meant to cover those bases, we cannot believe it can be so restricted as to embrace only the actual formal transfer of sovereignty in respect to other bases. This remains true whether or not Congress contemplated, at the time of the enactment of the original act of August 16, 1941, the war and the consequent capture of bases.

The base at Ia Shima had been obtained from a foreign government by conquest. The armed forces of this nation held it and were using it in conducting the war against Japan. The United States had possession

and control of it and there is no reason whatever to believe that Congress intended to make any distinction between civilian workers at a base so acquired and those, for instance, at a base acquired by lease or for that matter in any other way within the usual and ordinary meaning of the term.

The language of the statute is sufficiently clear in this respect, we think, to put the air base at Ia Shima within the Defense Bases Act, as amended, and is abundantly clear to put Parker within the class of employees covered. In so many words it is provided that the compensation act, as amended, "shall apply in respect to the injury or death of any employee engaged in any employment." Parker was concededly the employee of a government contractor and was engaged in taking off in an airplane for the purpose of making a test flight to determine its fuel consumption. His death while so doing is, therefore compensable and his employer and its insurance carrier have no cause of action. Under this view we have no occasion to consider the ground for decision relied upon by the trial judge.

Judgment affirmed.