540

ALASKA AIRLINES, INC., a corporation, Plaintiff,

v.

J. J. O'LEARY, as Deputy Commissioner, Bureau of Employees' Compensation, Fourteenth Compensation District, United States Department of Labor, Defendant (two cases).

Nos. 5659, 5728.

United States District Court
W. D. Washington, N. D.
April 25, 1963.

Gordon W. Moss, of Evans, McLaren, Lane, Powell & Moss, David B. Bowman, Seattle, Wash., for plaintiff Alaska Airlines, Inc.

Brockman Adams, U. S. Atty., Douglas M. Fryer, Atty., Dept. of Justice, Thomas H. S. Brucker, Asst. U. S. Atty., Seattle, Wash., Keith R. Ferguson, Sp. Asst. to Atty. Gen., Dept. of Justice, San Francisco, Cal., for defendant J. J. O'Leary, as Deputy Comr.

BEEKS, District Judge.

These consolidated actions, involving substantially identical issues of fact and law, challenge the legality of and seek to set aside five compensation orders issued by defendant as Deputy Commissioner, Bureau of Employees' Compensation, Fourteenth Compensation District, United States Department of Labor. Compensation was awarded under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq., as made applicable to employment at certain defense base areas by the Defense Base Act, 42 U.S.C. §§ 1651–1654, and was in the form of death benefits to the beneficiaries of five aircraft flight crew employees of plaintiff who were killed when plaintiff's aircraft crashed at Shemya, Alaska on July 21, 1961. At the time of the casualty, plaintiff's aircraft was engaged in transporting Government-owned material from Travis Air Force Base, California, to Tachikawa Air Force Base, Japan, pursuant to a contract between plaintiff and Military Air Transport Service (MATS), an agency of the United States Government.

The complaints allege, in effect, that the compensation orders are not in accordance with law because Defense Base Act coverage is not applicable for the following reasons: (1) Plaintiff's contract was not "for the purpose of engaging in public work," within the meaning of the Defense Base Act; (2) plaintiff's contract was not to be performed outside the continental United States insofar as the deaths of plaintiff's employees are concerned; (3) plaintiff's contract was analogous to the furnishing of materials to the United States and thus excluded from the Defense Base Act; and (4) the deceased employees were members of the crew of the aircraft

and excluded from the benefits of the Act.

Defendant filed a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure on the principal ground that the Deputy Commissioner's findings that the fatal injuries in each case were within the coverage provisions of the Defense Base Act are supported by the record and cannot be disturbed. Defendant further argued: (1) Plaintiff's contract was a "public work" contract within the meaning of the Defense Base Act; (2) plaintiff's contract was a contract to be performed outside the continental United States; (3) plaintiff's contract was not a contract to furnish materials; and (4) the fact the deceased employees were members of the crew of the aircraft is immaterial.

In reply to defendant's motion for summary judgment plaintiff filed a cross motion for summary judgment under Rule 56 upon the same grounds set forth in the complaints, and both cases were argued and submitted to the Court on the aforesaid motions.

The principal issue raised by plaintiff is the validity of defendant's conclusion in each of the compensation orders that the aforesaid deaths are covered by the Defense Base Act because (1) the plane was being operated under a "public work" contract with the United States, and (2) the transportation services furnished under said contract were to be performed outside the continental United States through trans-oceanic flights.

Initial inquiry in this case must be directed to the following two questions: First, is there any presumption as to the applicability of the Defense Base Act under the circumstances of this case; and second, what is the scope of judicial review which this Court may undertake in a proceeding which attacks findings made by an administrative agency. This inquiry is necessary because if the Court is bound by the Deputy Commissioner's determination that the Defense Base Act is applicable to the deaths herein there is no need to proceed further.

As to the first question, the presumption of applicability of the Longshoremen's Act, 33 U.S.C. § 920,[1] is applicable to situations arising under the Defense Base Act. 42 U.S.C. § 1651(a); Turner v. Willard, 154 F.Supp. 352 (S.D.N.Y.1956). The Court's attention has not been directed, however, to any authority which holds that the presumption applies where the issue is basically one of law, as in this case, where the facts are undisputed. Indeed, a review of the authorities discussing this statutory presumption discloses that it has been applied almost solely to the issue of whether an employee's injury or death arose in the course of his employment. Such is the situation in Davis v. Department of Labor, 317 U.S. 249, 63 S.Ct. 225, 87 L.Ed. 246 (1942), and other cases cited by the defendant. Furthermore, the text of Section 920 itself contemplates application only to factual situations. The Court is therefore of the opinion that there is no presumption applicable to this case.

Defendant urges that as to the second question, the allowable scope of judicial review, his findings cannot be disturbed unless unsupported by substantial evidence on the record considered as a whole, citing O'Leary v. Brown-Pacific-Maxon, Inc., 340 U.S. 504, 71 S.Ct. 470, 95 L.Ed. 483 (1951). There is no question but that this is the standard which must be applied by reviewing courts when faced with *findings of fact* made by a Deputy Commissioner. However, here, it is to be noted that the Deputy Commissioner's finding that the aircraft was being operated under a "public work" contract necessitated that he engage in statutory interpretation and

1. 33 U.S.C. § 920 reads in pertinent part as follows:
"In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary—
"(a) That the claim comes within the provisions of this chapter."

construction in order to determine whether or not plaintiff's contract came within the definition of "public work" contained in 42 U.S.C. § 1651(b) (1). The Deputy Commissioner further found that the contract was to be performed outside the continental United States. This finding required that the Deputy Commissioner determine the meaning of the statutory reference to contracts "to be performed outside the continental United States." Surely the interpretation of a statute is a question of law and not of fact. The Court is, therefore, of the opinion that the findings attacked here are questions of law freely reviewable without any presumption as to their correctness. This is the mandate of the Administrative Procedure Act, as amended, 5 U.S.C. § 1009(e), which provides in part as follows:

"(e) So far as necessary to decision and where presented *the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions,* [emphasis added] and determine the meaning or applicability of the terms of any agency action."

The multitude of cases cited by defendant and especially the Brown-Pacific-Maxon case, supra, are all distinguishable from the case at bar as all having involved findings based on pure fact or inferences therefrom.

 Plaintiff first attacks the finding of defendant that the aircraft was being operated under a "public work" contract with the United States at the time of the accident. The argument is as follows: (1) In order for the contract in question to be subject to the provisions of the Defense Base Act it must be a contract performed for the purpose of engaging in "public work" as defined by 42 U.S.C. § 1651(b) (1); [2] (2) applying the familiar rule of statutory construction known as the rule of *ejusdem generis* [3] to the definition of "public work" found in that section, the contract must involve "construction, alteration, removal or repair"; (3) there is no evidence whatsoever that the subject contract involved any of such elements; (4) ergo, the Deputy Commissioner's finding is erroneous as a matter of law.

The Court would be inclined to agree with plaintiff's line of reasoning as to the interpretation of the definition of "public work" contained in 42 U.S.C. § 1651(b) (1) if this statute were a new statute which had not been the subject of any case law to the contrary and for which there was no contrary legislative history. But in view of the fact that both the cases and the legislative history dealing with the definition of "public work" have tended toward a broader definition of that phrase,[4] the Court must and does find that the contract in question was one "to be performed for the purpose of engaging in public work."

Plaintiff next contests the Deputy Commissioner's finding that the transporta-

---

2. 42 U.S.C. § 1651(b) (1) reads as follows:

"(1) the term 'public work' means any fixed improvement or any project, whether or not fixed, involving construction, alteration, removal or repair for the public use of the United States or its allies, including but not limited to projects or operations under service contracts and projects in connection with the national defense or with war activities, dredging, harbor improvements, dams, roadways, and housing, as well as preparatory and ancillary work in connection therewith at the site or on the project."

3. Ordinarily, the rule of *ejusdem generis* limits general terms which follow specific terms to matters similar to those specified. See Fourco Glass Co. v. Transmirra Products Corp., 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957); United States v. Alpers, 338 U.S. 680, 70 S. Ct. 352, 94 L.Ed. 457 (1950).

4. See Republic Aviation Corporation v. Lowe, 69 F.Supp. 472 (D.C.N.Y.1946), affirmed 164 F.2d 18 (2d Cir. 1947); see also S.R. No. 1886, 85th Congress, 2d Sess.; and page 55 of Hearings held March 31 and April 2, 1942, before a Subcommittee of the Committee on Education and Welfare, United States Senate on S. 2412.

tion services furnished under the contract were to be performed outside the continental United States for the purpose of determining applicability of the Defense Base Act.

Plaintiff's argument proceeds as follows: (1) Conceding that the subject contract could not have been completely performed until delivery of the material to Japan, the contract did require performance partly within and partly without the continental United States since transportation services necessarily involve continuous performance. Thus the contract was being performed from the time loading of the aircraft commenced at Travis Air Force Base until the time of the crash at Shemya. (2) The Defense Base Act requires that the contract be performed outside the continental United States; [5] therefore where the contract is mixed requiring performance both inside and outside the continental United States, to determine applicability of the Act, the contract must be geographically characterized by the performance engaged in at the time of the accident. This is true even though the Act is said to apply irrespective of the place where injury or death occurs.[6] (3) Such a result is harmonious with the objectives of the Defense Base Act which are to provide compensation coverage to those employed in foreign lands where in all probability there would be no local compensation act to provide benefits; further, the Act was never intended to apply to the performance of contracts occurring within the United States.

Defendant answers the argument outlined above by stating that the terms of the contract in question called for performance outside the United States, i. e., delivery of the material from Travis Air Force Base, California to Tachikawa Air Base in Japan, and that the particular route taken was not a part of the contract and is immaterial. Defendant further argues that the very terms of the Act make the place of death or injury immaterial as long as the contract calls for performance outside the continental United States.

It is clear that 42 U.S.C. § 1651 (a) (4) does not require that a contract be performed *wholly* outside the continental United States in order to be subject to the provisions of the Act. It does not say so and if interpreted to mean that would thwart the basic purpose underlying the Defense Base Act, as amended.

But it occurs to the Court that there is inherent weakness in the position taken by defendant in his briefs and in oral argument that the contract in question was to be performed outside the continental United States because it called for delivery of the material to Japan, regardless of the extent to which performance inside the United States was also required by the very nature of the endeavor. As is pointed out by plaintiff, this position requires the interpolation of additional words into the statute in order to make it read, "where *any part of* such contract is to be performed outside the continental United States." Again, the statute does not say this and if interpreted to mean this poses a serious problem as to where the line is to be drawn. A few examples will suffice to show the consequences of a holding that the contract in question was to be per-

---

5. 42 U.S.C. § 1651(a) (4) reads in pertinent part as follows:

"(4) under a contract entered into with the United States * * * where such contract is to be performed outside the continental United States and at places not within the areas described in subparagraphs (1)–(3) of this subdivision, * * *."

6. 42 U.S.C. § 1651(a) provides in part as follows:

"(a) Except as herein modified, the provisions of the Longshoremen's and Harbor Workers' Compensation Act, as amended, shall apply in respect to the injury or death of any employee engaged in any employment—

 * * * * *

irrespective of the place where the injury or death occurs, * * *."

formed outside the United States for the purpose of determining applicability of the Defense Base Act.

Suppose that while the aircraft in question was being loaded at Travis Air Force Base an employee of Alaska Airlines engaged in loading activities was injured or killed. If defendant's position is correct then this employee would be covered by the Defense Base Act.

As a second example, suppose that the aircraft involved had taken off from Travis Air Force Base and while proceeding across the Pacific Ocean developed engine trouble, lost an engine and returned to Travis. While attempting to land the aircraft crashed and the crew members were all killed. Are the crew members covered by the Defense Base Act under these circumstances? According to defendant's position they would be.

Take a third example which goes one step further. Suppose that in the last example the aircraft made its emergency landing safely, but that the pilot or another member of the crew was run over by a loading truck while proceeding from the aircraft to the flight operations center. Would the Defense Base Act cover this employee?

Finally, to proceed even further than the foregoing examples take us, suppose that the XYZ Company of San Francisco, California has a contract with the Government calling for construction of a facility of some kind on an island in the Pacific which requires that preliminary design and engineering work be done in San Francisco. A draftsman working on the construction plans is required to leave his place of work in the performance of this contract and is struck by an automobile while crossing Powell Street. Complete performance of this contract calls for the construction and erection of a facility on foreign soil and if defendant's position is sound this draftsman would also be covered by the Defense Base Act. Where should the line be drawn?

The Court is convinced that Congress in drafting the Defense Base Act and the 1958 amendment thereto never intended to extend Federal compensation benefits to employees such as those in the above examples who are injured or killed while performing work within the continental United States. The very purpose of the Act is to provide benefits to those who would not otherwise be covered.[7]

Therefore, in order to be consistent with congressional intent as to the purposes of the Defense Bases Act, the Court concludes that in order to determine whether the Act is applicable to the contract in question it is necessary to view the contract as one calling for performance both inside and outside the continental United States, and that it is therefore necessary to geographically categorize the performance at the time of the accident. The Court therefore determines that performance at the time of the accident was inside the United States, and that the subject contract was not to be performed outside the continental United States within the meaning of 42 U.S.C. § 1651(a) (4).

In reaching this conclusion, the Court is aware that the Act makes the place of death or injury immaterial. But such a provision should not be controlling where the question of coverage depends on the place of performance.

In view of the conclusions hereinabove reached, it is unnecessary to consider plaintiff's further contentions: (1) That its contract was analogous to the furnishing of materials to the United States and thus excluded from the Defense Base Act, and (2) that the deceased employees were members of the crew of the aircraft and excluded from the benefits of the Act.

Defendant's motion is denied and summary judgment will be entered for the plaintiff.

Plaintiff shall prepare a decree in accordance with this opinion for presentation on May 6, 1963, at 9:30 a. m.

7. See authority cited in footnote 4, supra.