370 F.2d 46
 FLYING TIGER LINES, INCORPORATED, and Employers Mutual
Liability Insurance Company of Wisconsin, Appellants,
v.
David R. LANDY, Deputy Commissioner for the 13th
Compensation District and Peter Gregory Thomas, Maureen
Altair Thomas, and Terry Ava Thomas, Minor Children of
Gregory Peter Thomas, Deceased, Appellees.
 No. 20358.
 United States Court of Appeals Ninth Circuit.
 Nov. 14, 1966.
 
 Warren Hanna, of Hanna & Brophy, San Francisco, Cal., for appellants.
 John W. Douglas, Asst. Atty. Gen., Cecil F. Poole, U.S. Atty., Morton Hollander, Leavenworth Colby, Attys., Dept. of Justice, Washington, D.C., for appellees.
 Before: JERTBERG, BROWNING, and ELY, Circuit Judges.
 ELY, Circuit Judge:
 
 
 1
 Appellants, plaintiffs below, sought to set aside and enjoin enforcement of a compensation award made by the Deputy Commissioner. 42 U.S.C. 1653(b). Their appeal challenges the District Court's action in granting the Deputy Commissioner's motion for summary judgment and dismissing the suit. Our jurisdiction rests on 28 U.S.C. 1291.
 
 
 2
 The controversy originated with the disappearance, on March 16, 1962, of an airplane operated by Flying Tiger Lines, Inc., the plaintiff-employer, and piloted by Gregory Peter Thomas, whose survivors are the codefendants in the action. Pursuant to a contract between Flying Tiger and the United States Air Force, the plane was transporting military personnel from Travis Air Force Base in California to Viet Nam, via Manila.
 
 
 3
 After entry of an order of the Superior Court of Los Angeles County, California, establishing that the pilot's death had occurred on the date of the disappearance, his minor children, through their mother as guardian ad litem, filed a claim for death benefits under the California Workmen's Compensation Act, Cal.Labor Code 3201-6149. On March 18, 1963, following a hearing, a referee of California's Industrial Accident Commission awarded them $17,500 to be paid at the rate of $70 weekly. After $4,270 had been paid in installments, and at the request of the beneficiaries, the Industrial Accident Commission ordered payment of the balance of the award in a lump sum. The then present value of the remaining obligation, $13,230 to be paid at $70 weekly, was $12,549.91. This amount was paid, resulting in there having been paid a total of $16,819.91 in satisfaction of the original award of $17,500.
 
 
 4
 The same applicants thereafter filed a claim for death benefits under the Defense Base Act, 42 U.S.C. 1651-1654. Appellants contested the claim, and on August 7, 1964, the challenged award was made. Under its terms, appellants were held to be liable to appellees for $68.25 per week from the date of the plane's disappearance and continuing so long as appellees should maintain eligibility requirements. Credit was allowed appellants for the $16,819.91 which they had actually paid pursuant to the prior state award.
 
 
 5
 The contention that the federal award should be set aside is based on two theories, (1) that decedent's death was not compensable under the terms of the federal act and the Deputy Commissioner was thus without jurisdiction to enter the award, and (2) that either the state determination was res judicata or the earlier application for and receipt of state benefits constituted a binding election of remedies.
 
 
 6
 Additionally, it is argued that if appellees were entitled to a federal award, appellants should have been credited with payment of $17,500, the face amount of the state award, and not merely for the sum of $16,819.91 which was actually paid.
 
 
 7
 The district judge upheld the Deputy Commissioner's award under 42 U.S.C. 1651(a)(4), which extends the provisions of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. 901-950, to employees engaged in employment under certain contracts entered into with any agency of the United States for the purpose of performing public work. Section 1651(b)(1) defines 'public work' as
 
 
 8
 '* * * any fixed improvement or any project, whether or not fixed, involving construction, alteration, removal or repair for the public use of the United States or its allies, including but not limited to projects or operations under service contracts and projects in connection with the national defense or with war activities, dredging, harbor improvements, dams, roadways, and housing, as well as preparatory and ancillary work in connection therewith at the site or on the project;'Appellants urge that a 'public work' contract was not here involved. They rely on Walker v. American Overseas Airlines, 275 App.Div. 974, 90 N.Y.S.2d 537 (1949), in which the New York intermediate appellate court held, on the authority of Losch v. Curtiss-Wright Corp., 275 App.Div. 1, 87 N.Y.S.2d 714 (1949), that an airplane pilot hired to perform duties similar to those performed by the decedent herein was not within the coverage of the Defense Base Act. In Losch, the court had observed,
 
 
 9
 'It seems obvious to us that the Congress in the enactment of this legislation and in the definition of'public work' intended to limit its scope to projects of a fixed and permanent nature, and to afford coverage only to those employees who were engaged in construction and similar work. It requires a strained and unnatural interpretation to stretch its phraseology to cover an aircraft technician.' 87 N.Y.S.2d at 716.
 
 
 10
 In Republic Aviation Corporation v. Lowe, 69 F.Supp. 472 (S.D.N.Y.1946), aff'd, 164 F.2d 18 (2d Cir. 1947), cert. denied, 333 U.S. 845, 92 L.Ed. 1128, 68 Sup.Ct. 663 (1948), a federal claim arose from the death of a test pilot who had been sent to a far eastern air base to demonstrate a new plane, pursuant to a contract between his employer and the United States. The District Court upheld a Defense Base Act award on the theory that the case fell within the public work provision. The Court of Appeals affirmed, but the basis of the affirmance was section 1651(a)(1), which extends coverage to employment at certain military bases.
 
 
 11
 In 1958, subsequent to the rendition of these decisions, Congress enacted the definition of 'public work' in its present form. When the aforementioned cases were decided, the statutory definition was
 
 
 12
 '* * * any fixed improvement or any project involving construction, alteration, removal, or repair for public use of the United States or its Allies, including but not limited to projects in connection with the war effort, dredging, harbor improvements, dams, roadways, and housing, as well as preparatory and ancillary work in connection therewith at the site or on the project.'
 
 
 13
 Act of Dec. 2, 1942, ch. 668, 301, 56 Stat. 1036.
 
 
 14
 The Senate Report on the amendatory bill reveals that the purpose for the redefinition was
 
 
 15
 '* * * to clarify its meaning and make it construe consistently with Federal court decisions. * * * By redefining the term 'public work' to include the words 'whether or not fixed,' the original intention to have it apply to projects of all kinds otherwise within the definition, including service contract projects, is reaffirmed.' 1958 U.S.Code Cong. & Ad. News 3321, 3324.
 
 
 16
 In Alaska Airlines, Inc. v. O'Leary, 216 F.Supp. 540 (W.D.Wash.1963), vacated, 336 F.2d 668 (9th Cir. 1964), the District Court ruled that a contract between an employer and a United States government agency, pursuant to which a pilot transported cargo from Travis Air Force Base to an air base in Japan, was one 'to be performed for the purpose of engaging in public work.' 216 F.Supp. at 543. On other grounds, however, the District Court held that the Defense Base Act was inapplicable.
 
 
 17
 The language of section 1651(b)(1) is now sufficiently broad to encompass the type of employment in which the applicant's decedent was engaged. The legislative history reenforces this conclusion.
 
 
 18
 Next, appellants contend that, regardless of the applicability of section 1651(a)(4), the award was erroneously contrary to 42 U.S.C. 1654, which provides that
 
 
 19
 'This chapter shall not apply in respect to the injury or death of * * * (3) a master or member of a crew of any vessel.'
 
 
 20
 In Warner v. Goltra, 293 U.S. 155, 55 S.Ct. 46, 79 L.Ed. 254 (1934), the Supreme Court explained that the purpose for the identical provision in the Longshoremen's and Harbor Workers' compensation Act, 33 U.S.C. 903, was to accommodate the desires of seamen who preferred the remedy for damages afforded them under the Jones Act to benefits under the system of workmen's compensation. 293 U.S. at 160, 55 S.Ct. 46. Here, the appellees, had no alternative remedy under the provisions of the Jones Act. The cases cited by appellants in support of their argument that 'vessel' should be construed so as to include an airplane are not persuasive.[1] In our opinion, the deceased pilot was not 'a master or member of a crew of any vessel' within the meaning of section 1654.
 
 
 21
 Turning to another issue, the familiar principle of res judicata is based on belief that public policy demands that there be an end to litigation, 'that those who have contested an issue shall be bound by the result of that contest; and that matters once tried shall be considered forever settled as between the parties.' Baldwin v. Iowa State Traveling Men's Ass'n,283 U.S. 522, 525, 51 S.Ct. 517, 75 L.Ed. 1244 (1931). The principle applies to determination of questions of jurisdiction as well as to determination of other issues. American Surety Co. v. Baldwin, 287 U.S. 156, 166, 53 S.Ct. 98, 77 L.Ed.231 (1932).
 
 
 22
 In Chicago, R.I. & P.Ry. v. Schendel, 270 U.S. 611, 46 S.Ct. 420, 70 L.Ed. 757 (1926), the widow of a workman killed in the course of his employment with the railroad initiated a Minnesota state court action. The claim was based upon the Federal Employers' Liability Act, 45 U.S.C. 51-60. Shortly thereafter, the employer instituted a proceeding in Iowa, requesting an arbitration under that state's workmen's compensation law. The death was compensable under the Iowa statute only if the decedent had been engaged in intrastate commerce. The federal act afforded a remedy only if the employment were interstate in character. The Iowa Commission was the first tribunal to reach a decision. It expressly found that the work was intrastate, and its determination was upheld by the Iowa state courts. The Supreme Court held that the Iowa decision on the issue of the nature of the employment was res judicata and that the widow was not entitled to a review of that question in the Minnesota case in which she had proceeded under the federal act. Appellants urge that the rationale of Schendel requires us to hold that the dependents here were precluded from seeking benefits under the Defense Base Act by reason of their having sought and recovered benefits under the California act.
 
 
 23
 In Durfee v. Duke, 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963), the Court clearly indicated that the first decision on jurisdictional issues will be held to preclude further inquiry into those questions in another forum only when they have been 'fully and fairly litigated by the parties and finally determined'. 375 U.S. at 116, 84 S.Ct. at 248. Accordingly, we are obliged to examine the nature of the proceedings before the California tribunal.[2]
 
 
 24
 Although the record on this appeal does not contain a transcript of the entire proceedings before the California Industrial Accident Commission, the referee's award is before us. It does not include a specific finding that the federal Defense Base Act is inapplicable,[3] and the appellants concede in their briefs that the issue of federal jurisdiction was never raised before the state body. In no manner, then, can it be said that the issue was 'litigated * * * and finally determined' at all, let alone 'fully and fairly.' The res judicata rule of Schendel is inapplicable.
 
 
 25
 There is more weight to appellants' contention that the applicants, by seeking and recovering benefits under the state act, made a binding election of remedies. Appellants cite Texas Employers Insurance Association v. Calbeck, 249 F.Supp. 217 (E.D.Tex.1966), wherein Judge Fisher held that an injured employee who had litigated a claim before the state commission to final judgment could not thereafter claim federal benefits under the Longshoremen's and Harbor Workers' Compensation Act. Enforcement of an award made under the federal act was enjoined. One of the grounds of Judge Fisher's well-reasoned decision was that the determination by the state tribunal was res judicata on the issue of jurisdiction. Our case is distinguishable, for in the Texas case the issue of jurisdiction had been raised and fully litigated in the first proceeding in the state court. As an alternative ground, however, Judge Fisher ruled that the employee had made a binding election of remedies.
 
 
 26
 The concept of election of remedies is meaningless, of course, if no choice of remedies exists. By their terms, neither the Longshoremen's and Harbor Workers' Compensation Act nor the Defense Base Act affords the injured employee or his survivors any choice between federal and state benefits. Coverage under the former act, which was involved in the Texas case, extends only to those cases in which the injury occurred 'upon the navigable waters of the United States (including any dry dock) and if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law.' 33 U.S.C. 903(a). The Congressional intent, as evidenced by that language, was to provide protection only for those employees otherwise within its scope for whom no other remedy had been afforded previously. The coverage provision embraced the rule established by a line of Supreme Court decisions beginning with Southern Pacific Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917). In those decisions, it was held that under some circumstances states could, but under other circumstances could not, consistently with the federal constitution, apply their compensation laws to maritime employees. Only if such state legislation should be directied to matters sufficiently local in character so that it would not work 'material prejudice to the characteristic features of the general maritime law' or interfere with the 'proper harmony and uniformity of that law in its international and interstate relations' would it be constitutionally permissible. 244 U.S. at 216, 37 S.Ct. at 529. The vice of this rule was that in a case involving an employment which was not so clearly a matter of local concern as to be definitely within the competence of state legislation nor so clearly of general maritime concern as to fall within the exclusive scope of the federal legislation, an injured employee encountered risk in seeking to apply one or the other of the compensation systems. If he proceeded incorrectly, the passage of time might well bar him from starting anew, thus effectively depriving him of any remedy at all. The Supreme Court attempted to eliminate the dilemma by holding that such questionable employments fell within a so-called 'twilight zone' and that persons injured in the course of such employments might recover under either the state law or the federal compensation system. Davis v. Department of Labor, 317 U.S. 249, 63 S.Ct. 225, 87 L.Ed. 246 (1942). Later, the Court explained that 'Davis, in effect, gave an injured waterfront employee an election to recover compensation under either the Longshoremen's Act or the Workmen's Compensation Law of the State * * *.' Hahn v. Ross Island Sand & Gravel Co., 358 U.S. 272, 273, 79 S.Ct. 266, 3 L.Ed.2d 292 (1959). It was on this authority that the District Court in Texas correctly applied the rule of election of remedies.
 
 
 27
 The election of remedies rationale is not properly applicable here unless the appellees had a choice to make, and they had no choice unless it can be held that the 'twilight zone' concept of Davis should be extended to cases involving the Defense Base Act. The Davis rule harmonizes with the Congressional purpose reflected in the Longshoremen's Act, that is, to insure that there be some remedy, regardless of whether it be state or federal. But the coverage provisions of the Defense Base Act clearly evidence the intent that the act shall afford the sole remedy for injuries or death suffered by employees in the course of employments which fall within its scope. Those employments are specified in 42 U.S.C. 1651(a), and section 1651(c) provides,
 
 
 28
 'The liability of an employer, contractor (or any subcontractor or subordinate subcontractor with respect to the contract of such contractor) under this chapter shall be exclusive and in place of all other liability of such employer, contractor, subcontractor, or subordinate subcontractor to his employees (and their dependents) coming within the purview of this chapter, under the workmen's compensation law of any State, Territory, or other jurisdiction, irrespective of the place where the contract of hire of any such employee may have been made or entered into.'
 
 
 29
 The quoted language clearly reveals a Congressional preference for the federal remedy. While the 'twilight zone' concept promotes the legislative purpose behind the Longshoremen's Act, wherein no such preference is apparent, its application here would only interfere with the apparent policy of the Defense Base Act by affording a choice of remedies which was not intended.
 
 
 30
 We hold, therefore, that the 'twilight zone' concept of Davis has no application to the Defense Base Act and that, since there was no prior adjudication on the issue of whether the decedent's employment was within the scope of that act, the Deputy Commissioner had jurisdiction to render the disputed award.
 
 
 31
 Neither appellants nor the appellees cite any decisions, nor have we been able to discover any, which have dealt with the issue regarding the amount of credit to be given for the payments made under the state award. The question appears to be one of first impression.
 
 
 32
 We have reached the conclusion that it was error to allow appellants credit only for the amount of money which they had actually paid. The Deputy Commissioner determined that the claimants were entitled to $68.25 per week, beginning with the date of decedent's death and continuing as long as applicable age and dependency requirements could be met. By July 7, 1964, the date of the hearing on the federal claim, 845 days, approximately 120.7 weeks, had elapsed since the disappearance of the airplane. The Deputy Commissioner therefore held that, as of the date of his award, the applicants were entitled to have received $8,238.75 in federal benefits. But they had already received from appellants the larger sum of $16,819.91, and the Deputy Commissioner ordered that appellants commence payment of additional installments when the amount of the excess payment, $8,581.16, at the rate of $68.25 per week, should become absorbed.
 
 
 33
 Under the original state order, they were required to pay $17,500 in weekly installments of $70. Under a subsequent state order, in which there was a commutation of a remainder of the obligation, they paid, in a lump sum, a discounted amount which, added to the sum which had previously been paid in installments, was sufficient to satisfy the total original obligation. That the total amount which was actually paid was $680.09 less than $17,500 does not alter the fact that the appellants released to the applicants an amount which was equal in value to the total amount of the state award.[4] The appellants did not make the advance payment because they desired to do so. They made it because, after a hearing, they were ordered to do so by the California tribunal. They were deprived of the use of their money while the applicants gained its use, and it would be unjust to ignore this fact.
 
 
 34
 The appellants do not seek recalculation under which the question would arise as to whether the interest rate prescribed by California statute or that prescribed by federal statute would be applicable, nor do they seek relief which might require careful determination of offsetting credits to which the appellants and the applicants might be entitled.[5] They ask no more than that they be given credit for $17,500, the value of that which they paid. At the very least, they are entitled to this.
 
 
 35
 The cause is remanded for the sole purpose of enabling the District Court to direct the Deputy Commissioner to amend his order so as to provide that not until.$9,261.25, rather than $8,581.16, shall have been absorbed by the allowance of a credit of $68.25 per week from the date of his award shall the appellants be obligated to commence the future weekly payments required by that award.
 
 
 36
 Reversed and remanded with directions.
 
 
 
 [1]
 Gdynia-America Ship. Lines, Limited v. Lambros Seaplane Base, 115 F.Supp. 796 (S.D.N.Y. 1953), held that a seaplane was a vessel so as to qualify it as a proper object of salvage because of its capability as a means of transportation on the water. In Lacey v. L. W. Wiggins Airways, 95 F.Supp. 916 (D.Mass.1951), the parties agreed that the Death on the High Seas Act, 46 U.S.C. 761-768, was applicable to an airplane accident held to have occurred on the high seas. But that statute applies whenever 'the death of a person shall be caused by wrongful act * * * occurring on the high seas * * *.' 46 U.S.C. 761. The word 'vessel' is used only in the provision that suit in admiralty may be maintained against the vessel, person, or corporation which would have been liable if death had not ensued. The provision pertains only to the remedy of in rem proceedings against a vessel. Lacey is not authority for the proposition that a plane is a vessel, even as the word is used in a limited provision pertaining to procedure
 
 
 [2]
 Western Boat Bldg. Co. v. O'Leary, 198 F.2d 409 (9th Cir. 1952), held that an injured workman's acceptance of benefits under the State of Washington's workmen's compensation act did not preclude recovery of subsequent benefits under the Longshoremen's and Harbor Workers' Compensation Act. Our court suggested that the claimant's rights under the federal act would not have been barred even if there had been a specific adjudication by the state tribunal on the question of whether the federal or state compensation law was applicable. The suggestion was mere dictum. 198 F.2d at 411
 
 
 [3]
 Inasmuch as section 1651(c) provides that liability under the federal act shall be exclusive of all other liability under state compensation systems, a complete adjudication on the issue of jurisdiction before the state tribunal would include, at least impliedly, a determination that the claim did not fall within the purview of the Defense Base Act
 
 
 [4]
 While it is correct that, under 33 U.S.C. 914(k), any federal commutation of benefits awarded under the federal act must be approved by the Deputy Commissioner after a finding by him that such action would be 'in the interest of justice,' his view was limited, as is ours, by the fact that payment, commuted in part, had already been made. The simple, uncontrovertible truth is that, at the time of the federal award, the appellants had paid, in money value,.$9,261.25 more than they were obligated to have paid under federal law
 
 
 [5]
 For example, the obligation of the appellants under the federal act arose as of the date of the plane's disappearance, yet payments were not commenced under the mistaken application of the state statute until after the decision reached in the contested hearing before the state tribunal. As a matter of fairness, it would seem that the applicants would be entitled to interest on the unpaid installments which were due under the federal act and which had accrued during that period of delay. On the other hand, the appellants, for an extended period of time, paid $70 per week to the applicants when they were obliged to pay no more than $68.25. It would seem that the appellants might be entitled, as against the mentioned interest which might be claimed by the applicants, to offset interest which might have been earned by retention of the excess payments of $1.75 per week