EMPLOYERS' MUTUAL LIABILITY IN-
SURANCE COMPANY OF WISCON-
SIN, Insurance Carrier, and the Flying
Tiger Line, Inc., Employer, Plaintiffs,

v.

John D. McLELLAN, Jr., Deputy Com-
missioner, Second Compensation Dis-
trict Bureau, Foreign Compensation
District, United States Department of
Labor, and John Johnstone, Defendants.

No. 67 Civ. 4653.

United States District Court
S. D. New York.

Oct. 6, 1969.

See also D.C., 290 F.Supp. 910.

Kirlin, Campbell & Keating, New York
City, for plaintiffs; James B. Magnor,
New York City, of counsel.

Robert M. Morgenthau, U. S. Atty. for
Southern District of New York, for de-
fendant John D. McLellan, Jr.

Louis E. Greco, Attorney in Charge,
Admiralty and Shipping Section, Depart-
ment of Justice, of counsel, for Deputy
Commissioner.

Florio, Dunn, Marciano & Lypinski, Hoboken, N. J., and Tabacoff, Sylvan & Tabacoff, New York City, for defendant John Johnstone; Stephan P. Lypinski, Hoboken, N. J., of counsel.

## OPINION

FREDERICK van PELT BRYAN, District Judge:

This is an action to review and set aside an award of Workmen's Compensation death benefits in favor of defendant Johnstone, father of the decedent employee. The award was made by a Deputy Commissioner of the Bureau of Compensation pursuant to the Longshoremen's and Harbor Workers' Compensation Act as amended, 33 U.S.C. § 901 et seq., as made applicable to employment at certain defense base areas and elsewhere by the Defense Base Act as amended, 42 U.S.C. §§ 1651–1654. Both sides now move for summary judgment pursuant to Rule 56, F.R.Civ.P., on the record before the Deputy Commissioner.

The decedent employee, James M. Johnstone, was a flight engineer on a Flying Tiger Line airplane which crashed and burned at Adak, Alaska, en route from Travis Air Force Base, California, to Kadena Air Base, Okinawa. The flight was performed under contract between the employer, Flying Tiger Lines, and the Government for services in the transportation of cargo to the defense establishment in Okinawa. The crash occurred when the plane attempted to land for refueling at the United States Air Station at Adak and thus the plane never reached its overseas destination. Decedent was trapped in the plane and died the same day from burns he received.

Plaintiffs, the employer and its insurance carrier, attack the award on two main grounds, contending

(1) that the contract between the Government and the employer for services in the transportation of cargo between the continental United States and Okinawa was not within the coverage of the Defense Base Act as it extended the provisions of the Longshoremen's and Harbor Workers' Compensation Act and therefore the Deputy Commissioner had no jurisdiction over the claim; and

(2) that there is no substantial evidence in the record as a whole to support the Deputy Commissioner's decision that the claimant father (a) was partially dependent on the decedent employee at the time of death and (b) was entitled to continuing payments of death benefits.

42 U.S.C. § 1651(a) (4) provides, in part, that the Longshoremen's and Harbor Workers' Compensation Act, as amended, applies in respect to the injury or death of any employee engaged in any employment "under a contract entered into with the United States * * * where such contract is to be performed outside the continental United States * * * for the purpose of engaging in public work, * * * but nothing in this paragraph shall be construed to apply to any employee of such contractor or subcontractor who is engaged exclusively in furnishing materials or supplies under his contract."

Plaintiffs contend that the contract in question was not entered into for the purpose of engaging in public work. The statute defines "public work" as "any fixed improvement or any project, whether or not fixed, involving construction, alteration, removal or repair for the public use of the United States or its allies, including but not limited to projects or operations under service contracts and projects in connection with the national defense or with war activities, dredging, harbor improvements, dams, roadways, and housing, as well as preparatory and ancillary work in connection therewith at the site or on the project." 42 U.S.C. § 1651(b) (1). In my view, the legislative history and the case law plainly indicate that the statutory definition of public work is sufficiently broad to encompass the activities in the case at bar.

In Republic Aviation Corp. v. Lowe, 69 F.Supp. 472 (S.D.N.Y.1946) the plaintiff employer brought an action, as in

this case, to set aside a compensation award made under the Defense Bases Compensation Act. The plaintiff employer, a manufacturer of aircraft, had contracted with the United States Army to furnish technical representatives and test pilots to the Government to instruct in and assist with the assembly, servicing, alteration and repair of the aircraft manufactured by the employer. The deceased was killed on the island of Ia Shima while performing services for the employer as a test pilot under the contract. At the time of the suit the statute defined "public work" as "any fixed improvement or any project involving construction, alteration, removal, or repair for public use of the United States or its Allies, including but not limited to projects in connection with the war effort, dredging, harbor improvements, dams, roadways, and housing, as well as preparatory and ancillary work in connection therewith at the site or on the project." The court held that a liberal construction of the statute was required and that a public work, within the meaning of the statute, was involved.

The statutory definition of the term "public work" was amended to its present form in 1958, in order to clearly indicate that movable projects, including service projects, were within the coverage of the statute. S.R.No.1886, 85th Congress, 2nd Session; U.S.Code Cong. & Admin.News 1958, p. 3321.

Since the amendment of the statute several decisions have approved a liberal reading of the phrase "public work" to more clearly carry out the remedial purposes of the statute. In Flying Tiger Lines, Inc. v. Landy, 370 F.2d 46 (9th Cir. 1966), the decedent, an airplane pilot, was killed when his plane crashed while transporting military personnel from Travis Air Force Base in California to Vietnam via Manila, pursuant to a contract between his employer and the Government. Relying in part on the Republic Aviation case, supra, and the subsequent legislative changes in the statute, the court held that "section 1651(b) (1) [was] sufficiently broad to encompass the type of employment in which the applicant's decedent was involved." 370 F.2d at 49.

In Alaska Airlines, Inc. v. O'Leary, 216 F.Supp. 540 (W.D.Wash.1963), five crew members of plaintiff's aircraft were killed when the plane crashed at Shemya, Alaska, en route to Tachikawa Air Force Base, Japan, from Travis Air Force Base, California. The plane was operating pursuant to a contract between the decedent's employer and the Military Air Transport Service which called for the transportation of Government-owned material to Japan. The court held that the contract was one to be performed for the purpose of engaging in public work.

The contract in the case at bar which provided for the transportation of cargo and passengers to Kadena Air Base, Japan, was plainly a contract entered into for the purpose of engaging in public work and thus comes within the coverage of 42 U.S.C. § 1651(a) (4). The employer's contention that it was engaged exclusively in furnishing materials or supplies under the contract and thus not subject to the provisions of the Act is not persuasive. The employer provided the service of air transport, an activity clearly within the coverage of the Act. It did not manufacture or otherwise furnish materials or supplies except that it quite naturally furnished the aircraft necessary to fulfill its primary obligation of air transport. It cannot be supposed that when Congress said those engaging exclusively in furnishing materials or supplies are not covered by the Act it meant to exclude contracts such as that under consideration. This view is reinforced by the Congressional desire, expressed in the legislative history, to include service projects. Accordingly, I hold that the contract between the employer and the Government was entered into for the purpose of engaging in public work.

Plaintiffs next argue that the contract was not to be performed outside the continental United States and for

that reason not subject to the coverage of the Act. The flight originated at Travis Air Force Base, California, and was destined for Kadena Air Force Base, Okinawa. However, death occurred in the United States when the plane crashed in Alaska. It is apparent that the contract was to be performed outside the continental United States within the meaning of the statute. While it may be that performance was to take place partially within the United States in that loading of the aircraft would necessarily take place here, the purpose of the contract was to transport supplies outside of the continental United States. The performance within the United States, while necessary, was incidental in contrast to the performance without the United States. In any event, the statute does not say that all aspects of performance under the contract have to occur outside of the continental United States. Plaintiffs have advanced no reason why Congress would have sought to exclude an accident occurring under the circumstances of the case at bar from the coverage of the Act. The statute should be read liberally in order to carry out its remedial purposes. I hold that the contract was to be performed outside the continental United States within the meaning of 42 U.S.C. § 1651(a) (4).

■ Finally, plaintiffs challenge the Deputy Commissioner's award on the ground that there was no showing that the claimant's dependency continued for much of the period following his son's death. The compensation order which was filed on November 13, 1967 found with respect to dependency that decedent's father and mother had a combined income of less than $8,000 per year; that there were three children living at home at the time of decedent's death; that decedent contributed $70 every two weeks to the support of his father and the rest

of his family; that decedent's contributions were necessary to ease the general financial burdens on the family and to help in offsetting the educational expenses of decedent's brother and sisters; and that an award in lieu of decedent's contributions was necessary to maintain the financial position of the family and to enable them to continue their customary way of life. There are ample findings of fact on this subject and it is plain that there is substantial evidence in the record to support the Deputy Commissioner's holding that, at the time of decedent's death, his father and family were dependent upon him for financial aid.

Plaintiffs do not seriously challenge the Deputy Commissioner's findings of fact and conclusion as to dependency at the time of death. They take the position, however, that the Deputy Commissioner erred in holding that dependency continued after the date of death and still continued on the date of the award and in directing that compensation payments continue. Plaintiffs urge that there was no substantial evidence in the record to support such an award and that, on the contrary, the evidence compels a contrary result.

Plaintiffs point to evidence that two of the children living with the family at the time of death became emancipated prior to the award and that the earnings of both father and mother increased following the son's death. They also stress that the father received a life insurance payment as a result of the son's death which, they claim, eliminated the financial difficulties of the family.[1]

The defendants, on the other hand, urge that these factors did not materially alleviate the financial hardships of the family or its dependency on payments made by the decedent, in view of the increased cost of living due to inflationary

---

1. It may be noted that the general rule is firmly established, as plaintiffs concede, that life insurance benefits are not to be considered in determining the damages sustained by a beneficiary upon the death of an assured. Plaintiffs cite no case and advance no persuasive reasons indicating that a contrary rule should prevail in workmen's compensation. In any event, this is a question to be determined in the first instance by the Deputy Commissioner.

pressures, various family vicissitudes and other factors.

It is plain that there were two questions before the Deputy Commissioner which required determination before the award could be made. The first was whether there was dependency at the time of death. The second was whether such dependency continued after death and, if so, whether it still continued at the date of the award.[2] The Deputy Commissioner made detailed findings of fact with respect to the first of these issues and, as already indicated, there is substantial evidence to support such findings and the conclusion of dependency at the time of death which he reached thereon. As to the second question, however, there is not a single finding of fact or, indeed, any mention of or reference to evidence in the record on the subject of continuing dependency. The only reference at all to that subject in the findings of fact is the bare conclusory phrase in paragraph 15 that the dependent father is entitled to death benefits beginning March 16, 1962 (the date of death) "and continuing". It is impossible, from the findings of fact, to determine whether the Deputy Commissioner, in reaching the conclusion that dependency was "continuing", considered and took into account any of the evidence in the record on that subject. The absence of such findings of fact are particularly noticeable in the light of the meticulous and detailed findings on the first issue.

I do not suggest that the Deputy Commissioner's award was in error. All that I hold is that in the total absence of findings of fact on that subject, it is impossible for the Court to determine whether or not there is substantial evidence to support the award of benefits for continued dependency, or whether the Deputy Commissioner applied the proper legal standards.[3] See Jarka Corp. v. Hughes, 299 F.2d 534 (2d Cir. 1965).

The case must therefore be remanded to the Deputy Commissioner with the direction to make findings of fact on the issue of whether dependency continued from the date of death through the date of the award and thereafter and to state his conclusion based on such findings.

The motion of plaintiffs for summary judgment is granted to the extent of the limited remand indicated and judgment will be entered accordingly. The motion of defendants for summary judgment will be denied. All of this is without prejudice to appropriate further review by either party of the results before the Deputy Commissioner on remand.

It is so ordered.

---

**2.** 33 U.S.C. § 909(d) provides that dependency death benefits are payable "during * * * dependency".

**3.** This action is not, as defendants maintain, one based on change of circumstances subsequent to the date when the award was made (33 U.S.C. §§ 919 and 933). Plaintiffs do not rely on facts and circumstances occurring after the filing of the award. Rather, their reliance is on facts and circumstances in the record before the Deputy Commissioner which, they contend, indicate that the award of benefits for continuing dependency was erroneous. 33 U.S.C. §§ 919 and 922, vesting the Deputy Commissioner with jurisdiction to modify a previous award based on subsequent circumstances are thus inapplicable here. See Jarka Corp. v. Hughes, *supra*. As to any such claim, plaintiffs' remedy would be by appropriate application to the Deputy Commissioner in the first instance.